CAROLINE SESSA, as Administratrix, etc., of RAFFAELE SESSA, Deceased, Appellant, *v.* SHEVERS ICE CREAM CO., INC., now Known as HYDROX ICE CREAM COMPANY, INC., Respondent.

First Department, February 5, 1926.

Motor vehicles — action for death of plaintiff's intestate who was killed when defendant's motor truck struck him while he was walking along sidewalk — evidence — error to admit contradictory written statements containing conclusions made by plaintiff's witnesses on behalf of defendant with instructions to disregard conclusions — error was aggravated by court giving said statements to jury without again instructing jury to disregard conclusions.

In an action to recover damages for the death of plaintiff's intestate who was killed when defendant's automobile struck him while he was walking on the sidewalk, it was error for the court to admit in evidence, on behalf of the defendant, contradictory written statements made by two of plaintiff's witnesses which contained conclusions on the part of the witnesses as to negligence, although the court at the time the statements were admitted over the objection of the plaintiff instructed the jury to disregard the conclusions. It was error also because no foundation was laid for the admission of the statements in so far as they were admissible.

Furthermore, the error was aggravated when the court permitted the jury to take the written statements to the jury room without a further warning that they should not consider the conclusions contained therein.

APPEAL by the plaintiff, Caroline Sessa, as administratrix, etc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 16th day of June, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 28th day of May, 1925, denying plaintiff's motion for a new trial made upon the minutes.

*Sydney A. Syme,* for the appellant.

*Grattan B. Shults* [*Theodore H. Lord* of counsel; *G. Everett Hunt* with him on the brief], for the respondent.

DOWLING, J.    Plaintiff's intestate was walking along the sidewalk on the easterly side of Park avenue, south of its intersection with East One Hundred and Sixty-seventh street, borough of The Bronx, city of New York, when he was struck and killed by an automobile truck which had crossed the bridge over the railroad tracks at One Hundred and Sixty-seventh street and Park avenue and then had come into collision with defendant's automobile coupe, after which it struck the easterly curb of Park avenue and was overturned, striking and killing the intestate.    The owner of the automobile truck which actually killed the intestate was not joined as a party defendant, the action being predicated on the alleged sole negligence of the ·driver of defendant's coupe, which alone was claimed to have caused the accident.

There was, of course, no question of contributory negligence on the part of plaintiff's intestate, who was lawfully proceeding along the sidewalk with his back towards the point of collision of the two automobiles.    Defendant's contention was that its driver was entirely without fault and was guilty of no negligence either causing or contributing to the accident, which was caused solely by the negligence of the driver of the automobile truck which in fact caused intestate's death; while the driver of the truck was a witness for plaintiff and endeavored to establish that it was the impact of defendant's car in the collision which caused the truck he was driving to swerve diagonally to the left until it hit the curb; and there to overturn, crushing intestate in its fall.

It is unnecessary to discuss the facts at length, as they are not involved in the determination of this appeal, nor should we feel called upon to disturb the finding of the jury in favor of defendant as against the weight of the evidence.    But an error was committed by the learned trial court, which in my opinion was prejudicial to plaintiff and requires the reversal of the judgment herein.

Two witnesses were produced on behalf of plaintiff, named Charles Schleifer and George Pfeiffer.    They gave testimony favorable to plaintiff's contention that the accident was due to the negligence of defendant's driver.    During their cross-examination each of them admitted having made and subscribed certain statements produced by defendant's counsel, and testified that they also were true.    Thereupon defendant's counsel offered in evidence each statement as a whole, without interrogating the witness as to any discrepancies between the statement and his evidence, or making clear what such discrepancies were claimed to be.    When the first statement was offered, that of Schleifer,ʾ the following colloquy occurred: "Mr. Hunt: I ʾwill offer it in evidence.    Mr. Syme: I think, your Honor, I will ask you to look at this before

passing on it. There are a number of conclusions in there, and of course, as to the conclusions we object to the statement going in evidence. There are a number of matters as to which the witness has not been interrogated by either party, and as to those matters we object to the statement going in evidence. Anything that tends to contradict anything that this gentleman may have testified to, either on direct or cross, I have no objection to that extent. I think after you have examined it — The Court: I do not know how we can separate part of it and admit only part of it in. Mr. Syme: I appreciate that. Consequently, in the form in which it is offered we will have to object to it on the ground that it does not tend to contradict the testimony given by the witness either on direct or cross, and upon the further ground that it includes matters as to which the witness has not been interrogated by either counsel; upon the further ground that it contains conclusions of the witness which are incompetent. The Court: I will overrule the objection, counselor. At the same time I will instruct the jury to disregard that part of this statement which contains conclusions and not facts. Mr. Syme: Your Honor will permit me an exception to the admission of the portion of this statement which contains the conclusions of the witness? The Court: Yes. I will instruct the jury appropriately in respect to those matters, counselor. Mr. Syme: We respectfully except." Defendant's counsel thereupon read the entire statement to the jury.

That statement contained, among other things, the following: " The slight blow which the Ford gave the Reo, had nothing whatsoever to do with the accident, as there wasn't even a dent on the Reo car where this Ford came in contact with it. The Ford had already applied its brakes and came to an immediate stop just as the contact occurred. If the Reo truck had proceeded south and had not applied his brakes causing his car to skid the truck would not have struck the curb. *In my opinion it appeared that the truck tried to swing in front of the Ford by turning in a south-easterly direction, so as to allow the Ford car to proceed south.* There were skid marks made by the Reo truck about fifteen feet long. *In my opinion judging from what I saw the Ford coupe had the right of way and the driver of this Ford was in no way to blame for this accident.*"

The italicized matter is the part containing the conclusions or opinions of the witness to which plaintiff's counsel specifically called the court's attention, and was highly important to defendant (the owner of the Ford car) and highly prejudicial to the plaintiff.

The learned trial court, with his customary fairness, immediately after the reading of the statement, charged the jury as follows: " The Court: There are many things contained in that statement

which has just been read to you, gentlemen, that give expression to this witness's opinion and not the statement of facts. You are not to permit that to make any impression on you at all. His testimony must be respecting facts within his observation and conclusions arrived at by him based upon his observation are not competent evidence of the fact which is sought to be established here."

When the Pfeiffer statement was offered, the following took place: " Mr. Hunt: I will offer it in evidence. Mr. Syme: We object to this statement in the form in which it is presented, upon the ground that the statement purports to set forth the conclusion of the witness as to those facts as to which the witness has not been interrogated by counsel on either side. Mr. Hunt: I will gladly consent to your Honor's same instruction in regard to any conclusions. I am not offering it for any such purpose. I want the facts. The Court: The objection is overruled, with the same instruction to the jury as the court gave expression to in admitting the other written statement. Mr. Syme: We respectfully except to your Honor's ruling."

This statement also was read in full to the jury by defendant's counsel. It contained the following, among other things: *"In my opinion from what I saw it was the fault of the Reo truck* as it was traveling very fast directly for the curb when he had plenty of time and enough room to turn south into Park Ave., before he struck the curb."

When the learned trial court came to charge the jury, he did so fully, fairly and impartially. He made no reference in his charge to the two statements above referred to, nor did either counsel take any exception to such omission, or call his attention thereto and request any charge thereon.

As the jury was about to retire, however, the following occurred: " Mr. Hunt: Would your Honor tell the jury they may have these exhibits? The Court: If you want these exhibits, you may have them, Mr. Foreman. Mr. Syme: If your Honor please, are those signed statements going up? The Court: What are you speaking of? Mr. Syme: The two statements to which I objected and which you admitted. The Court: The jury will send for anything they want. If they ask for them, we will consider it then. Mr. Hunt: Well, I think the foreman, in effect, asked for them, may it please the court. The Court: If they ask for them, then we will consider it. Whatever they ask for we will consider, counselor. There is no objection to giving them the diagrams and photographs, is there? Mr. Syme: Not a bit. The Court: Give them those, and if they want the others, we can give them the others later. Mr. Hunt: I except to part of these

exhibits only being given to the jury. I am going to ask the court, in view of the foreman asking for the exhibits — The Court: Did he ask for them? I did not hear him ask for them. Mr. Hunt: Well, he said it right here when I mentioned them. The Court: If they want the exhibits, they can send for them, counselor. When they send for them then we will consider whether they ought to have them."

The jury thereupon retired. While they were out a message was received from them which was read by the court, as follows: " The Court: Here is a communication from the jury (reading): ' Your Honor, please let the jury have all the exhibits. Samuel B. Reddick, Foreman. Also a pad of paper.' Mr. Syme: May I have the record show, if your Honor please, that the plaintiff objects to the jury being handed the two statements which your Honor admitted in evidence, that is, the statements of Schleifer and Pfeiffer? They are the ones to which I objected upon the ground that the statements contained conclusions of the witnesses. We object to those going to the jury. The Court: Your objection is overruled, counselor. I might remind you that the court warned the jury at the time to pay no attention to that part of the paper which spoke of their opinions and conclusions, but to confine their attention to only that part which stated some facts. Mr. Syme: I respectfully except to your Honor's permitting those papers to be inspected by the jury. The Court: Yes." Whereupon all exhibits were transmitted to the jury.

From this colloquy two things clearly appear: (1) That the suggestion that these statements be given to the jury was pressed by defendant's counsel, who did all in his power to get the foreman to ask for them to take into the jury room; and (2) that the statements in their entirety, including the highly prejudicial matter, were finally sent into the jury room by the learned trial court at the request of the jury, but without recalling the jury to charge them as to the effect to be given to the papers, and to warn them not to give any consideration to the objectionable matter therein, which he had failed to do in his charge to the jury. His original limitation upon their value had been given so far back in the trial that it may well have been forgotten by the jury. Certainly, when his attention was called specifically to the fact that the statements contained conclusions of the witnesses, he should not have allowed them to be sent to the jury room without recalling the jury for appropriate instructions, or sending them simply so much of the transcript of the statements of the two witnesses as omitted the objectionable matter.

The proper procedure in such a case as that at bar is that laid

down by the Court of Appeals in *Hanlon* v. *Ehrich* (178 N. Y. 474). Judge WERNER, writing for the court, there said (at p. 479): "As we have intimated, the theory of the rule under discussion is comparatively simple and well settled; but its practical application has resulted in some difficulty and confusion. The principle upon which the rule is founded is obvious. As a witness may be contradicted by other witnesses, so he may be discredited by his own contradictory oral or written statements. One of the most frequent methods of impeaching a witness is by proving his prior oral statements in conflict with his testimony. The practice in this regard is necessarily simple and uniform. The first step in the process is to lay the foundation for such proof by asking the witness the specific question whether he ever made the statement which the examining counsel proposes to use against him. If the witness, without explanation or qualification, admits having made the statement, that is the end of the inquiry, because the witness has discredited himself and there is no need for contradiction. If, on the other hand, the witness denies having made the statement, or does not remember having made it, he may then be contradicted by any person who heard him make it. Such evidence of oral statements is usually direct and specific, or at least easily separable from statements not germane to the purpose of contradiction, and this is equally true of any denial, explanation or qualification which a witness thus discredited may thereafter desire to make.

" The rule as to documentary evidence, which is to be used to contradict the oral testimony of a witness, is necessarily somewhat different and has given rise to much discussion. Letters, affidavits, written statements, verified pleadings, depositions and previous testimony of a witness are admissible to impeach him, if they are material to the issue upon which he is testifying and if they tend to contradict or discredit him.

" When such a writing contains nothing except what is clearly contradictory of material testimony given by the witness, it would seem to fall within the general rule that a writing is not only the best evidence of what it contains, but the only evidence that is legally admissible of its contents, provided always that it is in existence and can be produced. In such a case the whole of the writing should be offered in evidence before it is allowed to be read.

" There are, however, many instances in which the writing may contain much irrelevant and even incompetent matter, in addition to some parts that are material, competent and contradictory of the witness.

" In such a case the proper rule would seem to be that only the material and competent parts should be received and read in evidence.

" In no event, however, should the writing, or any part thereof, be read until it has been marked in evidence.

" If the writing contains irrelevant or incompetent matter that cannot safely be submitted to a jury, it should be marked for identification and the competent parts thereof read into the minutes so as to form part of the record."

The danger of a contrary rule is demonstrated by the present case in which opinion evidence, which in no event would have been admissible if sought to be elicited directly, was placed before the jury by indirection. Even the learned court's effort to obviate its injurious effect on plaintiff's case by charging the jury to disregard those parts of the statements containing conclusions and not facts, would not have been enough to cure the error committed in admitting the statements in evidence *in toto.* This error was aggravated by the failure to renew the warning in the court's charge and by the sending out the statements in full to the jury without any instructions of any kind as to what parts thereof they were at liberty to consider and to which they could give weight.

The judgment and order appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., FINCH, MCAVOY and MARTIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.