LEONARD BLACKWOOD, Respondent, v. CHEMICAL CORN EXCHANGE BANK, Defendant-Appellant and Third-Party Plaintiff. Chicago Cleaning Contractors Corp., Third-Party Defendant.

First Department, December 10, 1957.

*George A. Garvey* of counsel (*Garvey & Conway,* attorneys), for defendant-appellant.

*Harry L. Koenig* for respondent.

McNALLY, J. Defendant appeals from a judgment in favor of plaintiff entered on a verdict after a jury trial. The action is one to recover damages for injuries suffered by the plaintiff resulting from a fall when a ladder owned by the defendant collapsed underneath him. The issue of liability was submitted to the jury solely on the basis of statutory liability under section 240 of the Labor Law. The jury was instructed it might not

find for the plaintiff unless it affirmatively answered three questions propounded by the court, one of which (the second) was: " Did the bank participate in directing the cleaning work being done in its Sutton Place branch?". No objection was made by either side to the submission of said questions. The dispute as to said submission centers on the court's definition of " direction "; defendant contending for one of control embracing the manner in which or how the work was to be done, and the plaintiff seeking one limiting the term to control of the ultimate objectives of the work, or to what work was to be done. The defendant's common-law liability on the facts herein, if any, is not presented for determination. (See *Koenig* v. *Patrick Constr. Corp.*, 298 N. Y. 313, 316.)

Plaintiff was employed by Chicago Cleaning Contractors Corp. Said corporation had been engaged by the defendant bank to provide cleaning service. On September 24, 1955, plaintiff, together with five other coemployees, reported to the bank's branch at 57th Street and Sutton Place to wash the wall and ceiling of the main floor. Chicago's employees brought mops and cans of wax but did not bring any ladders. Plaintiff was told by one of his supervisors to use the ladder which apparently was on the main floor. This is the ladder that subsequently collapsed. It appeared from the proof that the ladder was owned by the bank.

The factual issue presented by the second question put to the jury was whether, within the meaning of section 240 of the Labor Law, the defendant was directing the plaintiff. *Kluttz* v. *Citron* (2 N Y 2d 379, 383) indicates that the test of direction is supervision relative to the manner or method of performance of the work to be done; under *Kluttz*, there is no direction within section 240 if performance of the work is left solely to the judgment and experience of the independent contractor. The retention of the limited power of general supervision to ascertain whether the cleaning contracted for was being done is not the equivalent of direction within the meaning of section 240. (See *Moore* v. *Charles T. Wills, Inc.*, 250 N. Y. 426, 429.) Although the evidence supported adequately an affirmative response to the second question by the jury, in the light of the court's charge, the jury was left free to so find solely on proof of the fact that plaintiff and his employer were advised by the defendant of what work was to be done without regard to whether the defendant had assumed to instruct them as to the manner and method of performance. This is demonstrated by the response to the jury's request for clarification of the term " direction " which met with the following additional charge: " the second question

requires you to determine whether the bank in general directed what work should be performed, in the light of all the facts in this case. This does not mean that it necessarily had to have a representative present at all times. The question is, were the plaintiff and his employers told by the bank's representatives what was to be done.''

Immediately after said additional charge, the court refused the defendant's following request to charge: '' I ask the Court, in answer to that question, to charge the jury that by direction is meant that the defendant assumes such control or custody over the work that it directed the manner in which the work was done, rather than what work was to be done.''

It is, therefore, patent that the court's charge enabled the jury, upon proof of the contract between the defendant and plaintiff's employer and of defendant's instructions as to the extent of the work required, without more, to find for the plaintiff in response to the second question.

We are also of the opinion that plaintiff's Exhibit 4 was improperly received in evidence. Under proper circumstances, and with questions in proper form, a statement which contradicts the testimony of a witness may be introduced for the purpose of impeachment. The contents of such a statement should not be read until admitted in evidence, and hearsay and conclusory matters in such a statement should be excluded. A writing containing conclusory and hearsay statements should be received only for identification and the competent parts only read to the jury. Here the entire statement of the witness Gershuny was received in evidence.

One of the sharply contested issues in the case was whether or not the bank had provided the ladder to the plaintiff and his fellow workers for the purpose of cleaning. Before the statement was admitted in evidence, the learned trial court and counsel for the plaintiff questioned the witness as to whether or not the writing contained a statement that one Vecchio had told him that the ladder belonged to the bank and that it was left there in the bank by the bank personnel for the purpose of cleaning the high walls. The language in the exhibit follows: '' Mr. Vecchio told him to use the large ladder that belonged to the Chemical Corn Exchange Bank that was left there by the bank people for the purpose of cleaning the high walls.''

The harmful effect of such a writing is emphasized by the fact that Vecchio was not a witness at the trial. This, of course, was a hearsay statement and the portion of the writing to the effect that the ladder was left by the bank for cleaning the high walls was a conclusion on the part of either Vecchio or Gershuny.

It has always been the rule of this State that a writing cannot be read to the jury nor can it be used as a basis for cross-examination as to its contents unless it is in evidence. (*Larkin* v. *Nassau Elec. R. R. Co.*, 205 N. Y. 267, 270.) There are many instances in which the impeaching writing contains irrelevant and even incompetent matter in addition to some parts that are material, competent and contradictory of the witness. In such instances, the objectionable matter should be excluded. In the present case the objectionable parts of the writing were not excluded. The entire statement was admitted in evidence and was sent as an exhibit to the jury room without the learned trial court having limited its purpose or without having eliminated the objectionable features of the statement.

Since this case will have to be retried, it is well to call attention to the general rule that only the material and competent parts of a writing should be received and read in evidence. If the writing contains irrelevant or incompetent matter that cannot safely be submitted to a jury, the competent parts thereof should be read into the minutes so as to form part of the record. (*Hanlon* v. *Ehrich*, 178 N. Y. 474, 480–481; *Sessa* v. *Shevers Ice Cream Co.*, 215 App. Div. 390, 395–396.)

Moreover, since it was undisputed, it would have tended toward clarification of the issues if defendant's request to charge that plaintiff was not the defendant's employee had been granted.

The judgment should be reversed and a new trial directed, with costs to appellant to abide the event.

BOTEIN, J. P., RABIN, FRANK and VALENTE, JJ., concur.

Judgment so far as appealed from reversed upon the law and upon the facts, and a new trial ordered, with costs to the appellant to abide the event.