■ ETHEL KAJOWSKI, as Executrix of WALLACE KAJOWSKI, Deceased, Appellant-Respondent, v. IRVICO REALTY CORPORATION et al., Respondents-Appellants.— In this negligence action to recover damages for personal injuries sustained by the present plaintiff's testator, who died after trial, the jury returned a verdict in favor of the original plaintiff against defendants Irvico Realty Corporation (hereinafter called Irvico) and Charles Lo Bosco & Son, Inc. (hereinafter called Lo Bosco) in the amount of $110,000, following which the trial court denied said defendants' motions to set aside the verdict, etc., and rendered a written decision that the verdict would be set aside as to damages only, unless the original plaintiff would stipulate, within a stated time, to reduce the verdict to $35,000. Such stipulation was not given and therefore an order was made, on the court's own motion (Supreme Court, Kings County, dated February 27, 1969), which granted a new trial with respect to the issue of damages only. The original plaintiff and defendants Irvico and Lo Bosco have appealed from said order. Order reversed, on the law, without costs, and, (1) as between plaintiff and defendant Lo Bosco, action severed and new trial on the issues of damages only granted, unless, within 30 days after entry of the order to be made hereon, plaintiff shall serve and file in the office of the trial court a stipulation consenting to reduce the verdict to $60,000 as against said defendant and to the entry of a judgment accordingly, in which event the verdict against said defendant, as so reduced, is reinstated; and (2) as between plaintiff and defendant Irvico, the verdict is set aside and judgment is directed to be entered in favor of said defendant dismissing the complaint. The court has considered the questions of fact as to defendant Lo Bosco and it would not grant a new trial to that defendant upon those questions. In our opinion the jury's verdict, as against Lo Bosco, was excessive to the extent indicated herein. Plaintiff's testator was an employee of Irving Subway Grating Co. (hereinafter called Subway). Irvico had purchased certain property for the purpose of erecting a building to be used by Subway. Five underground tanks which were located on the property had to be removed to permit the laying of a foundation for the building. Lo Bosco was hired to remove the tanks. The agreement therefor provided that any burning (by ox-acetylene torch) was to be done by Subway's employee. Plaintiff's testator was assigned that task. He was injured by a flame which erupted from one of the tanks as he began the burning operation at the direction of one of Lo Bosco's employees. The jury could properly have found that Lo Bosco was guilty of negligence in its failure to properly drain the tanks before the commencement of the burning operation. Irvico's answer admitted that it had entered into the contract with Lo Bosco for the removal of the tanks and, at an examination before trial, James Young, Irvico's secretary-treasurer, indicated that Lo Bosco had been hired by Irvico. At the outset of the trial Irvico's motion to amend its answer to deny that it had entered into the contract with Lo Bosco was granted. The proof adduced at trial conclusively establishes that Lo Bosco was hired by Subway and not by Irvico. In our opinion it was error to submit the case to the jury as against Irvico. That defendant breached no obligation owed by it to plaintiff's testator. The use of an independent contractor shields Irvico from liability under section 240 of the Labor Law, even were Irvico held to have entered into the contract with Lo Bosco, as Irvico neither controlled nor directed the work (*Kluttz* v. *Citron*, 2 N Y 2d 379; *Haskins* v. *City of New York*, 28 A D 2d 656). Nor may Irvico be held liable under the plain terms of section 241 of the Labor Law, as it was not " constructing or demolishing buildings or doing any excavating in connection therewith " (cf. *Curtis* v. *State of New York*, 27 A D 2d

628, affd. 23 N Y 2d 976; *Olson* v. *480 Park Ave. Corp.*, 12 A D 2d 960). Similarly, Irvico may not be held liable under section 200 of the Labor Law, as the method to be used in the removal of the tanks was left completely to Lo Bosco, whose negligence in failing to drain the tanks was the proximate cause of the accident (cf. *Persichelli* v. *Triborough Bridge & Tunnel Auth.*, 16 N Y 2d 136; *Wright* v. *Belt Assoc.*, 14 N Y 2d 129; *Gasper* v. *Ford Motor Co.*, 13 N Y 2d 104). Shapiro, Acting P. J., Christ, Brennan and Benjamin, JJ., concur. Gulotta, J., dissents in part, with the following memorandum: I agree with the majority's decision that the award should be reduced to $60,000 but would sustain the verdict against both defendants in question on the issue of liability. The removal of the gasoline tanks was a necessary part of the building operation, since its purpose was to make way for the foundation of the building which was to be erected by Irvico for use by Subway. Inasmuch as both James E. Irving and James R. Young were officers of the tenant Subway and of the owner-landlord Irvico, no positive conclusion can be drawn, because of their dual positions, for which company they were acting when the oral arrangement was made with Lo Bosco to remove the tanks. Certainly the opinion of Lo Bosco's president on this score is of little importance, since the matter was of no concern to him so long as Lo Bosco was paid. The explicit testimony of Young, however, that Irvico was to erect the building for the use of the tenant is much more to the point and is virtually conclusive on that issue. The lease between Irvico and Subway, which would have settled the matter with finality, was never produced by Irvico, although its production had been demanded; nor was the failure explained. These facts demonstrate that the formal admission made by Irvico in the pleadings that it had hired Lo Bosco, and Young's testimony on his examination before trial to the same effect, were correct and fortify the conclusion that the jury properly disregarded Irvico's attempt to repudiate the admission at the trial. In this posture Irvico comes squarely within the purview of sections 200 and 241 of the Labor Law (as these sections read in 1963, when this accident occurred) and within the nondelegable obligation which an owner engaged in a building operation owes to a workman to furnish a safe place to work. This would be equally true whether plaintiff's testator be regarded as the employee of the tenant or the *ad hoc* employee of Lo Bosco at the time of the explosion. The case against Irvico does not rest on section 240 of the Labor Law, so the fact that Irvico had hired an independent contractor and may not have been directing the work at the time of the accident does not shield it from liability. The negligence for which Irvico was held was its own in failing to supply a safe place to work and not for the negligence of Lo Bosco in the methods with which it went about its job (cf. *Persichilli* v. *Triborough Bridge & Tunnel Auth.*, 16 N Y 2d 136; *Zucchelli* v. *City Constr. Co.*, 4 N Y 2d 52). We have here a specific rule of the Board of Standards and Appeals (12B NYCRR 23.57, subd. [f]) which required these gasoline tanks to be pumped out and flammable vapors purged before any flame cutting was done on them. These rules implement sections 200 and 241 of the Labor Law and furnish a standard to which those covered by these sections are required to conform. They include an owner as well as a general contractor. Thus, this is not a case which involves merely the details or the manner in which the work was being performed and for which an owner, not in immediate supervision, is not responsible (*Curtis* v. *State of New York*, 27 A D 2d 628), but involves a dangerous working place so long as these tanks were left unpurged. Irvico knew of the hazard, as evidenced by the fact that it had had the two larger tanks pumped out because of the recognized danger. Further, the arrangements were made with Irvico as part of the contract with Lo Bosco to lend it the services of a welder from Subway to burn holes in the tanks, so Irvico was

on notice of the hazard. This case is not too dissimilar from *Seigel* v. *Prima Concrete Constr. Corp.* (27 A D 2d 946), wherein an owner not in active supervision of the construction of a bank building was held to be potentially liable to an employee of a general contractor who was injured by an explosion of propane gas which had accumulated in the bank vault where a burning heater had been left in an unvented room. It was said that an aspect of the owner's duty was the detection of dangers discoverable by reasonable diligence (*Employers Mut. Liab. Ins. Co. of Wis.* v. *Di Cesare & Monaco Concrete Constr. Corp.*, 9 A D 2d 379, 382). That statement applies with particular pertinence here. In addition, in this case there is direct proof of actual notice to Irvico. It should be emphasized that this case differs from *Olson* v. *480 Park Ave. Corp.* (12 A D 2d 960) in that there the owner was completely out of possession of the leased premises and had nothing to do with the alteration which was in progress at the time the plaintiff was injured. The observation in that opinion that the owner is not responsible for violations of rules adopted under the Labor Law, I believe, must be taken in that light. Under these facts and the applicable law Irvico must respond in damages.