■ MARIO J. RIMOLDI et al., Respondents, v ROBERT SCHANZER et al., Defendants, and SAMUEL MILLMAN et al., Appellants. (Action No. 1.) JOSE RAMIREZ, Respondent, v ROBERT SCHANZER et al., Defendants, and SAMUEL MILLMAN, Appellant. (Action No. 2.)—In two actions to recover damages for wrongful death which are to be jointly tried, the defendants Samuel and Adrianne Millman (hereinafter the Millmans) appeal from an order of the Supreme Court, Rockland County (Kelly, J.), dated June 18, 1987, which denied their motion for summary judgment dismissing the complaint in action No. 1 as against them and the complaint in action No. 2 as against Samuel Millman.

Ordered that the order is modified by deleting the provisions denying those branches of the Millmans' motion which were to dismiss (1) the demands for punitive damages against them in action No. 1 and against Samuel Millman in action No. 2, and (2) those causes of action in the complaints which seek to recover damages against them for alleged violations of the Workers' Compensation Law, the Education Law and the Occupational Safety and Health Act and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed, without costs or disbursements.

The instant action arises out of an accident which occurred in July 1983 at the Millmans' residence in Pomona, New York. The Millmans were in the process of having an inground pool installed in their backyard when two of the employees of the general contractor involved in the construction were accidentally killed by falling debris from a backyard

patio. As a result of the accident, the estate of the decedent Vincent W. Rimoldi commenced a wrongful death action against the Millmans and the general contractors, and the estate of the decedent Anthony H. Ramirez commenced a wrongful death action against Samuel Millman and the general contractors.

The record establishes that in June 1983 the Millmans consulted with the defendants Larry Rowe and Robert Schanzer, doing business as Leisure Pool Service regarding the installation of the in-ground pool in their backyard. Given the undersized nature of the Millmans' lot, the existence of a large tree in the middle of the yard and a concrete patio extending from the rear of the house, Schanzer recommended that an octagonal-shaped pool be constructed. Although the parties discussed the possibility of removing the tree, Mr. Millman allegedly decided not to have the tree taken down. As a result, the parties agreed to the installation of a 23-foot octagonal pool which would not necessitate the removal of either the tree or the patio. By contract dated July 3, 1983, the parties agreed to the terms of the construction. The contract provided that Schanzer & Rowe, doing business as Leisure Pool Service would "furnish all materials and perform all labor necessary to complete" the work.

The excavation work on the Millmans' pool began on or about July 7, 1983, and continued for about three days. At that time, neither the Millmans nor Schanzer had applied for a building permit. During one of the parties' preliminary discussions, Schanzer apparently told Mr. Millman that while a building permit is usually needed for the installation of a pool, the pool could be completed before the permit was obtained. Schanzer, however, did not advise the Millmans as to whether a permit should be obtained, although he did know that a permit was required.

On July 12, one of the Millmans' neighbors informed the local building inspector of the construction on the Millmans' property. That same day, the building inspector visited the Millmans' property and upon observing the work, advised Mr. Millman that he was required to have a building permit. The building inspector also indicated that the pool as planned did not conform with the local sideline requirements.

Mr. Millman advised Schanzer of his discussions with the building inspector and they then considered possible alternatives for constructing the pool so as to satisfy the sideline requirements. In order to maintain the presence of the tree in

the backyard, which Schanzer felt was impractical to remove because of the size of its roots, Schanzer recommended that a portion of the backyard patio be removed. Mr. Millman consented to Schanzer's recommendations and the parties further agreed to change the configuration of the pool to make it slightly narrower in order to satisfy the sideline requirements.

The following day, July 13, Mrs. Millman and Schanzer went to the local building department. At that time, the building inspector personally informed Schanzer of the sideline requirements. On July 14, Mr. Millman visited the building department to file the building permit application and pay the requisite fee. Significantly, the application filed by Mr. Millman states that the builder and supervisor of the construction were the owners of the premises, namely the Millmans.

A factual dispute exists as to what instructions, if any, the building inspector gave to Mr. Millman on July 12 and 14 regarding the continuance of the construction of the pool without a building permit. Initially, during his examination before trial, Mr. Millman claimed that at no time prior to the issuance of the building permit did the building inspector discuss the issue of whether the construction could continue. However, in his affidavit in support of the motion for summary judgment Mr. Millman stated that prior to the issuance of the building permit, the building inspector advised him that the excavation could continue without a permit. In contrast, the building inspector, in a memorandum dated July 12, 1983, noted that on that date, following the inspection of the premises, he told Mr. Millman to stop the work and obtain a building permit. Similarly, in a subsequent affidavit, the building inspector stated that on July 12th, he ordered all work on the pool to cease until a building permit was issued. The building inspector also noted that when the application was filed by Mr. Millman there was no mention of the removal of a portion of the backyard patio or excavation of the area adjacent thereto.

The excavation work of the backyard resumed on July 15, 1983, even though no building permit had been issued. The general contractor determined that the backyard patio, which was a concrete slab approximately six inches thick, would be removed by digging under the patio and then hammering off pieces of the slab. The Millmans left for work on the morning of July 15th prior to the commencement of the excavation and returned home at approximately 3:30 P.M. When Mr. Millman walked to the backyard, he observed the workers digging and

he noticed that some panels had been placed in the excavated areas. When Mr. Millman indicated that in his opinion the panels were "a little off", Schanzer ordered his workers to realign the panels. Mr. Millman then entered the house. Shortly thereafter, the rear yard patio collapsed on the decedents who had been excavating beneath it.

The plaintiffs' claims against the Millmans are essentially premised on allegations that the Millmans participated in the direction and control of the construction and excavation on their property and as such violated various statutory provisions including Labor Law § 240 (1) and § 241 (6), which set forth requirements for conducting construction and excavation work. In addition, the plaintiffs claim, *inter alia*, that the Millmans violated the provisions of Labor Law § 200, which requires that an owner provide a safe place to work for the employees of a general contractor working on his or her premises.

Following service of their answer, the Millmans moved for summary judgment dismissing the complaint in both actions on the basis that they did not "direct or control" the construction or excavation of the pool and thus were excluded from liability under Labor Law § 240 (1) and § 241 (6). Additionally, the Millmans argued that they cannot be held liable for a breach of their statutory duty under Labor Law § 200 because the accident was caused not by a failure to provide a safe work place but rather by hazards which were inherent in the work which the contractor chose to perform.

The Supreme Court denied the Millmans' motion on the basis that a triable issue of fact exists as to whether the Millmans directed or controlled the installation of the pool and the excavation work. Additionally, the court determined that triable issues of fact exist on the issue of whether the Millmans breached their statutory duty under Labor Law § 200 and whether the breach, if any, was a proximate cause of the accident. We agree and, accordingly, affirm that part of the Supreme Court's order.

Labor Law § 240 sets forth certain standards which must be adhered to by general contractors and owners in conducting construction and excavation work and imposes absolute liability for injuries which occur as a result of a deviation from those standards. This liability is wholly independent of the owner's actual supervision or control of the work place *(Haimes v New York Tel. Co.,* 46 NY2d 132; *Picciotto v Molloy Coll.,* 129 AD2d 619). Moreover, Labor Law § 241 (6) imposes a nondelegable duty of insuring that the area where the work is

to be performed is "so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed" *(see, Zimmer v Chemung County Performing Arts,* 65 NY2d 513, 521; *Long v Forest-Fehlhaber,* 55 NY2d 154; *Monroe v City of New York,* 67 AD2d 89). Both statutes, however, provide an exclusion from liability for owners of one- and two-family dwellings "who contract for but do not *direct or control* the work" (Labor Law § 240 [1]; § 241 [6] [emphasis supplied]). The purpose of this statutory exemption, which was added in 1980, was to remove "the burden of strict liability from such owners when they have nothing whatsoever to do with the carrying out of the work" (1980 NY Legis Ann, at 266). Thus, the phrase "direct or control" contemplates the situation in which the owner supervises the method and manner of the work, can order changes in the specifications, reviews the progress and details of the job with the general contractor and/or provides the equipment necessary to perform the work *(see, Duda v Rouse Constr. Corp.,* 32 NY2d 405, 409; *Kluttz v Citron,* 2 NY2d 379; *Galbraith v Pike & Son,* 18 AD2d 39; *Blackwood v Chemical Corn Exch. Bank,* 4 AD2d 656; *Gallo v Supermarkets Gen. Corp.,* 112 AD2d 345).

In the situation at bar, we agree with the Supreme Court's determination that, at the very least, an issue of fact exists as to whether the Millmans retained the requisite degree of direction and control over the installation of their in-ground pool to impose liability under Labor Law § 240 (1) and § 241 (6). The facts establish that the Millmans exercised considerable supervision over the construction of the pool. For example, the Millmans were involved in the decisions regarding the location, the shape and the size of the pool as well as the consideration of alternative methods of construction in order to comply with the applicable sideline requirements *(see, Gallo v Supermarkets Gen. Corp., supra; cf., Schwartz v Foley,* 142 AD2d 635). In fact, when Mr. Millman arrived home on the afternoon of July 12, he requested that the panels which had been placed in the excavated area be rearranged because he believed that they did not comply with the sideline restrictions. Additionally, it is significant to note that in filling out the building permit application, Mr. Millman indicated that the owner of the premises was the builder and supervisor of the construction. Clearly, these facts raise an issue as to whether the Millmans had sufficient direction and control over the construction so as to warrant the imposition of liability under Labor Law § 240 (1) and § 241 (6).

To this extent, the situation at bar is factually dissimilar from this court's decision in *Schwartz v Foley (supra)*. In that situation, the plaintiff was hired by the defendant to paint the exterior of her residence. The plaintiff used all of his own materials and equipment necessary to perform the job. The defendant's only involvement in the project was the choice of paint to be used and her instructions as to what part of the house was to be painted. During the painting job, the scaffolding which the plaintiff had erected on the outside of the defendant's home collapsed, causing the plaintiff to fall and sustain injuries. In that situation, this court ruled that the defendant was not liable to the plaintiff under Labor Law § 240 (1) since the defendant did not "direct or control" the work. In the situation at bar, however, the Millmans' involvement in the construction of the pool was far more extensive and went beyond the mere choice of a pool and included their involvement in the shape, placement and construction of the pool as well as their supervision of the manner in which the pool was being constructed. These factors, in our opinion, raise an issue of fact as to whether the statutory exemption in Labor Law § 240 (1) and § 241 (6) applies to the Millmans.

We further find that an issue of fact exists as to whether the Millmans breached their statutory duty of providing a safe work place for the workers on their premises under Labor Law § 200. This section represents a "codification of the common-law duty which the owner and the general contractor owed to workmen to exercise reasonable care to render safe the places of work provided by them, together with the ways and approaches thereto (see *Rusin v Jackson Hgts. Shopping Center*, 27 NY2d 103; *Lagzdins v United Welfare Fund-Security Div. Marriott Corp.*, 77 AD2d 585, 586; *Moore v Suburban Fuel Oil Serv.*, 22 AD2d 827 [affd 16 NY2d 647])" *(Copertino v Ward*, 100 AD2d 565, 567). This duty of the owner, however, does not extend to injuries arising from a defect in the contractor's own plant, tools and methods or through the negligent acts of the contractor occurring as a detail of the work *(Persichilli v Triborough Bridge & Tunnel Auth.*, 16 NY2d 136, 145; *Kajowski v Irvico Realty Corp.*, 37 AD2d 991, lv denied 30 NY2d 481).

In the situation at bar, it is clear that the method which the general contractor chose to excavate the area near the rear concrete patio was a proximate cause of the accident and the Millmans' liability under Labor Law § 200 did not extend to the general contractor's negligence *(see, Persichilli v Triborough Bridge & Tunnel Auth., supra)*. However, the record also

established that Mr. Millman was actively involved in the decision to relocate and reshape the pool which necessitated the excavation of the area around the concrete patio. Moreover, an issue of fact exists as to whether the Millmans' failure to obtain a building permit and to stop work on the project until the permit was issued, constituted a breach of their duty under Labor Law § 200 and was a proximate cause of the accident. Clearly, one of the purposes for requiring a building permit is to insure that the work is done in a safe manner without threatening public safety *(see, Board of Trustees v Pyramid Cos.,* 51 AD2d 414, 417). There is substantial evidence in the record which indicates that Mr. Millman was directed by the building inspector prior to July 15, 1983 to cease all work on the project until the permit was issued. These factors, in our opinion, clearly raise questions of fact as to whether the Millmans can be held liable under Labor Law § 200 for breaching their duty to provide a safe work place.

We do find, however, that the plaintiffs' claims against the Millmans which are predicated on alleged violations of the Workers' Compensation Law § 11, the Occupational Safety and Health Act (29 USC § 654) and Education Law § 3215 (1) should be dismissed since the decedents were not employees of the Millmans but rather were hired directly by the general contractor. Additionally, the plaintiffs' demands for punitive and exemplary damages against the Millmans should be dismissed since there is no evidence in the record to support the conclusion that the Millmans' actions constituted "gross recklessness or intentional, wanton or malicious conduct" warranting the imposition of punitive damages *(Gravitt v Newman,* 114 AD2d 1000, 1002). Mollen, P. J., Kunzeman and Rubin, JJ., concur.

Thompson, J., concurs in part and dissents in part and votes to reverse the order appealed from and grant the Millmans' motion for summary judgment dismissing the complaint as against them, with the following memorandum in which Spatt, J., concurs. I concur with my learned colleagues in the majority that the plaintiffs' statutory claims against the defendant homeowners, Samuel and Adrianne Millman, asserted pursuant to Workers' Compensation Law § 11, the Occupational Safety and Health Act (29 USC § 654 [a]) and Education Law § 3215 (1) should be dismissed because the plaintiffs' decedents were not the Millmans' employees. I am also in agreement with the majority that the claim for punitive damages is not based upon a sufficient showing in the record. The alleged conduct on the part of the Millmans was not so

gross, wanton or willful, morally culpable or actuated by evil and reprehensible motives as to justify the imposition of punitive damages *(see, e.g., Garrity v Lyle Stuart, Inc.,* 40 NY2d 354; *Walker v Sheldon,* 10 NY2d 401; *Kaiser v Fishman,* 138 AD2d 456, 460). Therefore, the dismissal of the punitive damages claims is also proper.

However, my views diverge from those of the majority with respect to the Millmans' alleged violations of Labor Law §§ 200, 240 and 241. Contrary to the majority's holding, I am of the opinion that the evidence in the record demonstrates, as a matter of law, that the Millmans lacked the requisite direction and control over the construction of the swimming pool in their backyard so as to be subjected to absolute liability under Labor Law § 240 (1) and § 241 (6). Nor do I believe that a triable issue of fact exists as to whether the Millmans breached their statutory duty under Labor Law § 200 to provide a safe work place. Accordingly, I respectfully dissent and would dismiss the claims asserted against the Millmans in their entirety.

The Legislature in 1980 amended sections 240 and 241 of the Labor Law to exempt owners of single-family or two-family dwellings who contract for but do not direct or control the work being performed, from liability for breach of the nondelegable duty imposed thereunder and which breach proximately causes injury to a member of the class for whose benefit the statutes were enacted *(see, Zahn v Pauker,* 107 AD2d 118, 120). These amendments were made because it was " 'unrealistic to expect the owner of a one- or two-family dwelling to realize, understand and insure against the responsibility sections 240 and 241 * * * place upon him' " *(Zahn v Pauker, supra,* at 120, quoting 1980 NY Legis Ann, at 266-267). There is no dispute that the premises in question constituted a "one- or two-family dwelling" within the meaning of the homeowner's exemptions. The ultimate determination then necessarily rests upon how the terms "direct" and "control" are construed.

The meaning of the terms "direct" and "control" may be discerned from the decisional law which has provided a construction of these terms as used in similar and related contexts. In *Duda v Rouse Constr. Corp.* (32 NY2d 405), in which an employee of a subcontractor sought to impose absolute liability upon a general contractor under Labor Law § 240 (1) for injuries suffered when he fell from a scaffold, the Court of Appeals explained the term "directing" for purposes of the statute, as follows: " 'Directing' * * * means just that; for one

person to be 'directed' by another, there must be supervision of the manner and method of the work to be performed. The words are to be construed strictly and literally" *(Duda v Rouse Constr. Corp., supra,* at 409, quoting *Mendes v Caristo Constr. Corp.,* 6 NY2d 729). Thus, the court found that the complaint was properly dismissed for failure to make out the element of direction. Even though the general contractor had furnished the scaffolding from which the defendant fell, he was under no contractual obligation to provide scaffolding for the subcontractor and the provision thereof was merely permissive rather than directory as required by the statute.

In *Blackwood v Chemical Corn Exch. Bank* (4 AD2d 656) the employees of a cleaning company engaged by the defendant bank to provide cleaning services brought their own cleaning supplies when they reported for duty at one of the bank's branches but failed to bring any ladders. The plaintiff, one of the cleaning company's employees, was instructed by his supervisor to use a ladder which was owned by the bank and which subsequently collapsed under him causing him to fall and sustain injuries. In framing the issue of whether the bank was directing the cleaning work being done by the plaintiff so as to give rise to liability under Labor Law § 240 the court stated that "the test of direction is supervision relative to the manner or method of performance of the work to be done * * * there is no direction within section 240 if performance of the work is left solely to the judgment and experience of the independent contractor. *The retention of the limited power of general supervision to ascertain whether the cleaning contracted for was being done is not the equivalent of direction within the meaning of section 240"* (Blackwood v Chemical Corn Exch. Bank, supra,* at 657 [emphasis supplied]).

The recent decision of this court in *Schwartz v Foley* (142 AD2d 635), although not specifically defining the terms direction or control, set the parameters of the level of direction necessary for a homeowner to be held liable under Labor Law § 240 (1). The plaintiff therein, a painter, was hired to paint the exterior of the defendant's one-family residence. He provided all his own materials and equipment, including a scaffolding which he rented and which collapsed, causing the plaintiff to fall and sustain injuries. We held that summary judgment dismissing the complaint was properly granted because the defendant homeowner did not direct or control the painting being performed and, thus, could not be held liable under Labor Law § 240 (1). In reaching this determination, this court noted that the homeowner's involvement consisted

of determining what portion of the premises to paint and what color paint to use and did not include any supervision of the manner or method of the painter's work nor did the homeowner supply any materials or direct the painter to use the scaffolding in the performance of his work. Those facts were held to be insufficient to demonstrate direction and control within the meaning of Labor Law § 240 (1) *(see also, Dube v Kaufman,* 145 AD2d 595; *cf., Gallo v Supermarkets Gen. Corp.,* 112 AD2d 345, *lv denied* 66 NY2d 605).

Turning then to the circumstances of the instant case and examining them in the context of the foregoing case law, I view as less than compelling those actions which the majority interprets as indicative of control of the swimming pool construction project. Rather than demonstrating the significant degree of control necessary to hold the Millmans liable, the Millmans' conduct vis-à-vis the construction project reflected a retention of control over the project in matters related simply to the location and appearance of the pool with particular reference to compliance with the applicable side yard requirements. Moreover, the Millmans maintained a periodic check on the progress of the pool and would consult with the contractors as problems with the project arose. The Millmans did not supervise the method and manner of the pool construction. Review of the totality of circumstances does not demonstrate that the Millmans exercised any greater supervision or control over the project than an average homeowner would over work being performed on his property *(see, Schwartz v Foley,* 142 AD2d 635, *supra).* To the contrary, the record reveals that Leisure Pool's principals were solely responsible for directing the excavation and removal of the patio which subsequently collapsed on the plaintiffs' decedents. The Millmans relied upon the judgment and technical expertise of Leisure Pool's principals and retained only a limited power of general supervision. Certainly, this limited power, coupled with an absence of supervision of the technical components of the project, does not rise to the level of direction or control contemplated by the statute *(cf.,* 1980 NY Legis Ann, at 266-267; *Zahn v Pauker,* 107 AD2d 118, *supra).* Contrary to the majority's view, I do not find that the plaintiffs made an evidentiary showing sufficient to raise a material issue of fact requiring a trial *(see, Zuckerman v City of New York,* 49 NY2d 557).

Turning then to the plaintiffs' claims asserted pursuant to Labor Law § 200, I am of the opinion that they also are subject to dismissal. This statutory provision codified the

employer's common-law duty to provide his employees with a safe place to work and extended it by placing upon the owner of a building a similar obligation with respect to defects in the "plant" for the purpose for which the "plant" is used (Labor Law § 200 [1]; *Gasper v Ford Motor Co.,* 13 NY2d 104, 110). However, the duty is subject to certain well-recognized exceptions, as noted in the majority decision, to wit, relieving the owner from liability when the injury arises from a defect in the contractor's own plant, tools and methods or through the negligent acts of the contractor occurring as a detail of the work *(Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145; *Kajowski v Irvico Realty Corp.,* 37 AD2d 991, *lv denied* 30 NY2d 481), or when the injury results from hazards which are a part of or inherent in the very work which the contractor is to perform *(Rusin v Jackson Hgts. Shopping Center,* 27 NY2d 103; *Zuchelli v City Constr. Co.,* 4 NY2d 52). As to the latter exception, it has been held that "if a demolition worker is injured when the process of demolition so weakens a structure that it collapses upon him, he may not seek recovery from the owner" *(Monroe v City of New York,* 67 AD2d 89, 98). The majority acknowledges that the techniques employed by Leisure Pools which undermined the concrete patio proximately caused the accident but they conclude that a triable issue of fact exists stemming from the Millmans' involvement in relocating the pool and thereby necessitating the excavation of the patio area. I cannot agree with the majority's conclusion. Simply put, the Millmans can in no way be held liable for a breach of their duty under Labor Law § 200 where the area of the work, the excavation and the peril were created by Leisure Pool. Nor does the Millmans' failure to have obtained a building permit prior to the commencement of the excavation work or to have complied with the stop-work order compel a different result. While such conduct is not to be condoned, the Millmans' actions in this regard were not, as a matter of law, a proximate cause of the injury *(see, Mack v Altmans Stage Light. Co.,* 98 AD2d 468). "The purpose of applying for a building permit is to enable village authorities to make a determination of whether the proposed building complies with relevant zoning ordinances and building codes" *(Bon Air Estates v Village of Suffern,* 32 AD2d 921, 922). It is not the building inspector's task to ensure compliance with Labor Law construction provisions or those requiring that a safe place to work is provided.