Scileppi, J.
This is a wrongful death action brought by the widow of Archangelo Persichilli, a laborer employed by NassauMascali Construction Corp. (Nassau-Mascali), who died from asphyxiation during the course of his employment. The facts upon which plaintiff’s claim is based are as follows:
In September, 1954 defendant Triborough Bridge and Tunnel Authority (Triborough) entered into a contract with third-party defendant Nassau-Mascali to perform construction work, as general contractor, on Conduit Boulevard in the Borough of Queens, New York. This contract, known as CB-1, involved a work area covering several miles, and generally called for the performance of grading, paving and general construction work. During the same month, Triborough also contracted with defendant Lockwood, Kessler, Bartlett, Inc. (Lockwood), consulting engineers, to take charge of and supervise such construction work.
On May 25, 1955 the Department of Water Supply, Gras and Electricity of the City of New York wrote Lockwood and *143 requested that Nassau-Maseali he permitted to construct a “ blow-off pot ” for the city in the vicinity of the work being performed on Conduit Boulevard. This 11 blow-off pot” was to be connected by means of a 16-inch pipe to a 72-inch water main which ran under the roadbed. The 72-inch water main was divided into sections, and the function of the “ blow-off pot ” was to serve as a reservoir in the event that water had to be drained from a section of the 72-inch main. This would be accomplished by the use of valves located in a “blow-off manhole ” which would isolate the section of the water main to be drained, and divert the water therefrom through the 16-inch pipe into the “ blow-off pot ”. The pot, which was installed in the grass mall dividing the lanes of traffic on Conduit Boulevard, was rectangular in shape, about 4 feet square, and approximately 16 feet deep. Its sides and bottom were of reinforced concrete, with iron rungs set into one side to form a ladder, and the top was covered by an iron manhole cover.
The “ blow-off pot” was not part of the original contract entered into between Triborough and Nassau-Maseali and, accordingly, after the city’s request was approved, an extra work order covering the construction of this item was prepared by Lockwood and signed by Triborough and Nassau-Maseali. As a result of this extra work order, the construction of the “ blow-off pot” became a part of the contract and subject to its terms and conditions; however, plans and specifications for the construction were furnished by the Department of Water Supply, Gas and Electricity, and the cost of construction was chargeable to the Corporate Stock Funds of the department.
Construction of the “blow-off pot” was completed on June 28, 1955 and, although the city had not accepted it at the time of the accident, it admitted ownership of the pot on that date.
Around the latter part of May, 1956 cracks developed in the pavement recently laid by Nassau-Maseali on Conduit Avenue in the vicinity of the “blow-off pot”. The reason for the cracking was the settling of the subgrade, but no one knew what had caused the subgrade to settle. Accordingly, a conference was held on May 31, 1956 among representatives of Lockwood and Nassau-Maseali, at which time Lockwood directed Nassau-Maseali to remedy the defect, remove the *144 cracked portions of the pavement and dig test holes to ascertain why the subgrade was settling.
On June 13, 1956, the cause of the settling of the subgrade still being unknown, another conference was called by Mr. Robert Willit, Lockwood’s resident engineer on the job. This conference was attended by Mr. Willit; Mr. Dickson of the Department of Water Supply, Gras and Electricity, and his assistant; Mr. Darpino, Nassau-Mascali’s superintendent on the job, and decedent, Archangelo Persiehilli. At this conference it was thought that leakage from one of the city’s water pipes might be causing the settling of the subgrade and, to test this theory, Mr. Willit descended into the “ blow-off manhole ” and inspected its condition. Finding the manhole dry, Mr. Willit returned to the surface and related his findings to those present. Shortly thereafter the conference ended and the representatives of the Department of Water Supply, Gras and Electricity left.
Mr. Willit, Mr. Darpino and Mr. Persiehilli then proceeded to the “blow-off pot” and, at Mr. Darpino’s suggestion, decedent descended into the pot with a shovel. He scraped the bottom of the pot with the shovel, and then started up the iron rungs set in the side of the “ blow-off pot ”. After climbing a couple of rungs, decedent fell back, apparently unconscious. A nearby crane operator who descended into the “ blow-off pot ” to render assistance and help decedent to the surface also was overcome and fell unconscious in the bottom of the pot. Both men finally were removed by a police officer wearing a gas mask but, although artificial respiration revived the crane operator, decedent failed to respond and died of asphyxiation.
Plaintiff’s theory of negligence is the same against both Triborough and the city. It is that defendants failed to supply decedent with a safe place to work, and is succinctly stated in plaintiff’s brief as follows: “ The negligence with which Triborough is charged is its failure and omission to take (with respect to the blow-off pot in question) the precautions dictated and required by usage and custom, to wit, the measures * * * testified to by Mr. Madeheim, before having, Persiehilli enter the same, when Triborough (through Lockwood) knew, or could and should have known, that the said structure was likely to contain noxious gases or an oxygen deficiency.”
*145 Mr. Madeheim, whose testimony is referred to above as the basis for plaintiff’s claim, was a graduate engineer and an instructor in the field of industrial safety. Called as an expert witness by plaintiff, Mr. Madeheim testified to the custom and practice in New York City with respect to precautions taken before entering underground structures such as the “blow-off pot ” here in issue as follows:
“ The practice is to use what is known as a gas sampling kit which is a little kit which usually measures some 12 inches by 12 inches by 4 inches thick. That is step one.
“ Step two is in connection with manholes that are 10 feet in depth or deeper. That is to provide mechanical ventilation for manholes regardless of the showing of the gas sample.
* * #
“ The practice would be to take a portable blower with a canvas hose, hang this into the manhole to blow a supply of air from the surface into the manhole to make sure you would dissipate any air in the manhole which would be short of oxygen or contain gases.”
Plaintiff expressly disclaims any theory of negligence based upon defendants’ failure properly to maintain the “ blow-off pot ”. Her only theory, as has been shown, is that defendants failed to adhere to the custom and usage in the construction trade of taking gas samples before entering the pot and, since this was a 16-foot hole, using a portable blower while decedent was in the “ blow-off pot”. We do not believe that either Triborough’s or the city’s failure to supply this equipment constituted actionable negligence and, accordingly, hold that the judgment in plaintiff’s favor must be reversed and her complaint dismissed.
It is by this time well settled that the duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor’s own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work (Wright v. Belt Assoc. 14 N Y 2d 129, 134; Gasper v. Ford Motor Co., 13 N Y 2d 104, 110-111; Zucchelli v. City Constr. Co., 4 N Y 2d 52, 56; Hess v. Bernheimer & Schwartz Brewing Co., 219 N.Y. 415, 418-419). The Hess case particularly *146 is apposite here. In that case an employee of an independent contractor, hired by defendant to varnish beer vats in its plant, died as the result of inhaling fumes of methyl alcohol while working in the vat. The contention was that defendant negligently failed to supply blowers to carry off the poisonous vapors, and thus violated its duty to provide decedent with a safe place to work (Labor Law, § 200). Noting that the contract between defendant and the decedent’s employer (the contractor) required the latter to supply all the instrumentalities by which the work was to be done, the court stated (219 N. Y., pp. 418-419): “It cannot be said, however, that the duty of the employer is by this provision of the statute extended to supervision of the method of doing the work by the contractor, or that the employer thereby becomes responsible for the negligence of the contractor in failing to furnish proper appliances therefor. While the employer must exercise reasonable care to have his own plant safe for the employees of the contractor, he does not stand in the shoes of the contractor and become liable for the latter’s negligence. If the employer furnishes a ladder or a scaffold for the contractor’s employees to work on he must be careful to furnish a safe appliance (Huston v. Dobson, 138 App. Div. 810; Fuller v. Mulcahy & Gibson, 164 App. Div. 829), but if the contractor furnishes such appliances the employer does not thereby become responsible for their sufficiency. They are no part of the employer’s plant; failure to furnish them is not a defect in the employer’s plant; he is under no absolute duty to furnish them and the statute has no application.” (Emphasis supplied.)
Here, just as in Hess, the contract between Triborough and Nassau-Mascali required the latter to furnish the necessary equipment to complete the job. Paragraph 1 of the general specifications of the contract provided that “ The Contractor shall furnish all labor, materials, plant, equipment and other incidentals necessary or required for the complete construction of the work as required by the Plans, in accordance with these Specifications and to the complete satisfaction of the Engineers.” Even without this express provision, though, it would seem clear that it was decedent’s employer’s responsibility to furnish the proper supplies and materials to complete the job which *147 it had contracted to do.* Certainly a property owner who engages an independent contractor to do a task which is not inherently dangerous should not be held to account for injuries to the contractor’s employees because the contractor has omitted to bring along a tool vital to the job he was to perform.
Since neither Triborough nor the city was required to supply gas measuring devices or air blowers to decedent, their failure so to do does not give rise to any liability to plaintiff. And it follows from this that Triborough’s third-party complaint against Nassau-Mascali also must fall. The remaining appeals by the other parties to the action, of course, become academic.
The order appealed from should be modified by (1) reversing the judgment in favor of plaintiff against Triborough and dismissing the complaint, and (2) reversing the judgment against Nassau-Mascali on the third-party action by Triborough and dismissing Triborough’s third-party complaint and, as so modified, the order appealed from should be affirmed, without costs.
Judges Dye, Fuld, Van Vookhis, Burke and Bergan concur with Judge Scileppi ; Chief Judge Desmond dissents and votes to affirm.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.

 We intimate no opinion as to whether Lockwood might have assumed such control over the project as to have taken that responsibility on itself. That question is not before us as the result of the Appellate Division’s order for a new trial.