■ MICHAELE LOMBARDI, Respondent-Appellant, v JAMES STOUT, Appellant-Respondent and Third-Party Plaintiff-Appellant-Respondent, and DAVID VON SOTHEN et al., as Executors of FREDA G. VON SOTHEN, Deceased, Respondents and Fourth-Party Plaintiffs-Respondents. JOSEPH FACCHIN, INC., Third-Party Defendant-Appellant-Respondent; JOSEPH FACCHIN & CO., INC., Fourth-Party Defendant-Appellant-Respondent.—Order of the Supreme Court, New York County (David B. Saxe, J.), entered January 14, 1991, which, inter alia, denied that portion of defendant and third-party plaintiff James Stout's cross-motion for summary judgment and that portion of third-party defendant Joseph Facchin, Inc.'s motion seeking summary judgment dismissing plaintiff's cause of action based upon common law negligence and a violation of Labor Law § 200, is modified on the law, to grant said motion and cross-motion, and otherwise affirmed, without costs or disbursements.

Plaintiff was injured on April 15, 1982 when he fell from a ladder from which he was cutting a limb from a tree. Plaintiff

was employed by third-party defendant contractor Joseph Facchin, Inc. The premises were owned by the estate of Freda Von Sothen and at the time of the accident were the subject of a contract of sale between the Von Sothen defendants and defendant James Stout.

Mr. Stout, who owns a nearby funeral home, inspected the property with Joseph Facchin after the contract of sale was entered into to determine what work was necessary. Thereafter, Facchin asserts he entered the property without the knowledge or consent of either the owner Von Sothen or the contract vendee Stout to remove the tree. The plaintiff, on the other hand, asserts Facchin entered to do the work with the knowledge and at the request of Stout.

The IAS court granted the motion by Facchin and cross-motion by Stout for summary judgment as to plaintiff's cause of action pursuant to Labor Law § 240 but denied that portion of the motion and cross-motion seeking summary judgment as to plaintiff's cause of action based on common law negligence and a violation of Labor Law § 200. It further granted the cross-motion of the Von Sothen defendants for summary judgment dismissing the complaint as to them in its entirety.

For the purposes of this appeal, we accept plaintiff's version of the facts as true. Thus, we assume Stout was present at the scene of the accident on three occasions in two days, including the morning of the accident and was visibly inspecting the work of the branch removal and was aware of what was going on.

As defendants concede, Stout, by virtue of his status as a contract vendee, is to be treated as an "owner" for purposes of Labor Law liability under the circumstances herein. "The 'owners' contemplated by the Legislature are those parties with a property interest who hire the general contractor to undertake the construction work on their behalf (see NY Legis Ann, 1969, pp 407-408). It is the party who, as a practical matter, has the right to hire or fire subcontractors and to insist that proper safety practices are followed. It is the *right* to control the work that is significant, *not* the actual exercise or nonexercise of control." *(Sweeting v Board of Coop. Educ. Servs.,* 83 AD2d 103, 114 [emphasis in original], *lv denied* 56 NY2d 503.)

Nevertheless, the *nisi prius* court properly dismissed plaintiff's cause of action pursuant to Labor Law § 240 (1). This section imposes a non-delegable duty upon "owners" as well as contractors and their agents to provide reasonable and ade-

quate protection and safety to persons employed in construction, excavation or demolition work, regardless of the absence of control, supervision or direction of the work. Plaintiff contends the exemption in this statute for owners of one and two-family dwellings who do not direct or control the work does not apply since the work in issue was the preliminary stage of converting a residential property into a commercial property—*i.e.*, a parking lot for Stout's funeral parlor. However, Labor Law § 240 (1) applies to the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure". The tree which was the situs of the accident was not part of a building or structure for the purposes of the statute *(see, Manente v Ropost, Inc.,* 136 AD2d 681 [holding electrician replacing light bulb on light pole in parking lot of restaurant not within ambit of section 240]).

Labor Law § 200 is merely a codification of the common law duty of landowners to provide a safe place to work. "It is not breached when the injury arises 'out of a defect in the subcontractor's own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work' *(Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145)." *(Dube v Kaufman,* 145 AD2d 595, 596.) Thus, the owner is not required to supervise the contractor for the benefit of the contractor's employees nor is the owner required to protect the employees from defects in the contractor's tools and methods. There is an exception to this rule imposed where the owner assumes direct responsibility for the method of work performed *(Broderick v Cauldwell-Wingate Co.,* 301 NY 182). Thus, Labor Law § 200, just as the common law, which it codifies, is unlike section 240 (1) which provides for the vicarious responsibility of the "owner".

Here, the plaintiff's account of the accident, in an affidavit in opposition to defendant's motions includes the following:

"Work began at the premises where I was injured April 14, 1982. At that time, and early in the morning, I, together with other employees of the Facchin firm, consisting of a foreman, carpenter, roof man, and a laborer. At that time Facchin had two ladders, a 'small' one and a ladder which was a large extension ladder used to cut the tree branches, the one on which I was injured. On April 14, 1982 scaffolding was placed around some portion of the house as I recall, and the smaller ladder was used. At that time, Mr. Stout visited the premises early in the day, said hello to the workmen, and was aware of what was going on. In the afternoon of the 14th, and I do not recall the hour, Mr. Facchin, who was not present in the

morning, came on the job site. Shortly after, the defendant James Stout arrived, and the two of them had a discussion. The two were Stout and Facchin. They were around the tree at the time * * * Facchin * * * related to us * * * that Stout wanted the tree down to make room for a driveway * * *. He also said that Stout was afraid if the tree were left in the present condition someone might get hurt from the overhanging *[sic]* branches in a storm, or the electric wires might be cut * * *. Under common law, Stout was in and upon the premises both by contract permission as well as upon his own admission in the examination before trial, and upon my observations. He was well aware of the activity which he ordered and was aware of the condition of the tree which required removal. On any aspect of the proof he was aware of the necessity of ladder placement at the location of the high branches to be removed and thus is chargeable with the activity that he ordered from Mr. Facchin, and of the methodology *[sic]* of removal." In a second affidavit, plaintiff reiterated Stout's presence at the scene and also noted: "He surely knew of my presence on the location, and with that knowledge even under common law he is chargeable with the duty to give warning of the dangerous activity taking place with no lashing or other support of the ladder and with the total absence of any safety equipment for me. He likewise was chargeable with notice of the dangerous overhang of the tree over the public sidewalk and certainly is chargeable with notice of the activity in total taking place on and at the premises by the Facchin, Inc. contractor."

In describing the accident itself, plaintiff stated that Facchin's ladder was placed against the branch of the tree, the ladder was unsecured and he had no safety belt. He climbed the ladder with a gasoline powered saw and secured the saw and the branch with a rope held by another Facchin employee. However, the rope securing the branch to be sawed was thereafter "let go" by that employee while he drank coffee with Facchin, and when the branch was cut, it fell against the ladder causing him to fall.

This factual scenario clearly shows that the accident occurred not because of any inherently dangerous condition of the property itself, but solely because of "a defect in the subcontractor's own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work" (*Persichilli v Triborough Bridge & Tunnel Auth., supra,* 16 NY2d 136, 145).

Further, the mere presence of Stout at the scene does not

impose liability on him, in the absence of the exercise of supervision or control over the work performed at the site, since pursuant to Labor Law § 200, the owner is not responsible for the negligent acts of others over whom he had no direction or control (Allen v Cloutier Constr. Corp., 44 NY2d 290, 299). In Nagel v Metzger (103 AD2d 1), relied upon by the IAS court, the husband-owner exercised control over the manner in which the work was performed and thus summary judgment was properly denied him. To the extent that the Fourth Department in that case denied summary judgment to the wife-co-owner solely because she was present and observed the operation, we disagree with such holding as contrary to the long established rule. To so hold would require an owner present on a job site to affirmatively supervise the independent contractor in its method of performance and in its utilization of proper tools and safety equipment, which the overwhelming majority of owners are not qualified to do. Concur—Sullivan, J. P., Carro and Asch, JJ.

Milonas and Kassal, JJ., dissent in part in a memorandum by Milonas, J., as follows: In my opinion, summary judgment dismissing plaintiff's claims against defendant James Stout is inappropriate insofar as they relate to sections 200 and 240 of the Labor Law.

Labor Law § 200, which deals with the general duty to protect the health and safety of employees, states in subdivision (1) that all machinery, equipment and devices in work places shall be "placed, operated, guarded, and lighted as to provide reasonable and adequate protection". Pursuant to section 240 (1): "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Plaintiff alleges in his papers that:

"Work began at the premises where I was injured on April 14, 1982. At that time and early in the morning I, together with other employees of the Facchin firm, consisting of a foreman, carpenter, roof man, and a laborer. At that time Facchin had two ladders, a 'small' one and a ladder which was

a large extension ladder used to cut the tree branches, the one on which I was injured. On April 14, 1982 scaffolding was placed around some portion of the house as I recall and the smaller ladder was used.

"At that time Mr. Stout visited the premises early in the day, said hello to the workmen, and was aware of what was going on. In the afternoon of the 14th, and I do not recall the hour, Mr. Facchin, who was not present in the morning, came on the job site. Shortly after, the defendant James Stout arrived, and the two of them had a discussion. The two were Stout and Facchin. They were around the tree at the time. I recall in this connection that Facchin had told us while we were at work on another project the past week, probably on Friday, that he had an arrangement with Stout, the under-taker, to start fixing up the old house on 14th Avenue near Stout's funeral home since Stout needed the same for addi-tional parking * * *.

"After this discussion the next day I, with the carpenter on the job, went over to Mr. Facchin's mother's home to get the large, 23 foot ladder, Facchin was present and he related to us * * * that Stout wanted the tree down to make room for a driveway. We all knew that Stout was in the funeral home business in College Point. He also said that Stout was afraid if the tree were left in the present condition someone might get hurt from the overhanging branches in a storm, or the electric wires might be cut."

Plaintiff also asserts that:

"My recollection is that Mr. Stout * * * was present on the morning of my accident at the property. I recollect seeing him there as a follow up to his visit the prior afternoon of the 14th of April, the day before my accident. He was present at the time the ladder was placed against the tree, and clearly was inspecting the job site where I was injured as it happened.

"He surely knew of my presence on the location, and with that knowledge even under common law he is charged with the duty to give warning of the dangerous activity taking place with no lashing or other support of the ladder and with the total absence of any safety equipment for me. He likewise was chargeable with notice of the dangerous over hang of the tree over the public sidewalk and certainly is chargeable with notice of the activity in total taking place on and at the premises by the Facchin Inc. contractor.

"To my knowledge Mr. Stout had been at the job site on 3 occasions in two days, the 14th and 15th of April 1982. He

was at the job site on the date of the accident, and was visibly inspection *[sic]* the work of the branch removal. Furthermore it is within his plain eyesight that he could see the ladder in place without any lashing or other securing the same."

The majority, notwithstanding that Labor Law § 200 (1) refers to the manner in which machinery, equipment and devices are placed, guarded and lighted, have concluded that the accident herein occurred not because of any inherently dangerous condition in the ladder itself but solely as the result of "a defect in the subcontractor's own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work" *(Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145). However, *Persichilli v Triborough Bridge & Tunnel Auth. (supra)* involved the failure of the contractor to furnish a safety device; to wit, a portable air blower to maintain the atmosphere in a so-called "blow-off pot", whose function was to serve as a reservoir. Thus, the situation in that case was unlike the instant one in which it is claimed that a twenty-three foot ladder was not properly placed since it was unsecured and unstabilized. Indeed, the statute specifically includes the placement of equipment and devices within its purview, and the New York State Court of Appeals determined in *Heil v Schaefer Brewing Co.* (38 NY2d 935) that whether a ladder was properly positioned pursuant to Labor Law § 200 is a question of fact for the jury *(see, Tate v Clancy-Cullen Stor. Co.,* 171 AD2d 292). Moreover, an owner can be held liable under this provision if he supervised or controlled the work performed or had actual or constructive notice of the unsafe condition *(Reyes v Silfies,* 168 AD2d 979).

The majority, having assumed the fact finding process, have decided that as Labor Law § 240 (1) pertains only to the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" and the situs of the accident herein was a tree rather than a building or structure, this section is also inapplicable. However, since the work here was purportedly being performed in order to extend Stout's funeral parlor business onto his new property and occurred in the driveway therein, and there is authority for the proposition that a construction site, no matter how physically removed it is from a building or structure itself, is covered by Labor Law § 240 when the work there is directly connected to that building or other structure *(Cox v LaBarge Bros. Co.,* 154 AD2d 947, *lv dismissed* 75 NY2d 808; *Struble v John Arborio, Inc.,* 74 AD2d 55; *Ploof v B. I. M. Truck Serv.,* 53 AD2d 750), it is not as clear as the majority seems to believe that

plaintiff's tree cutting is not encompassed within Labor Law § 240. This question, along with the matter of whether the work was actually done with respect to a commercial enterprise and whether Stout supervised plaintiff's work for purposes of possible liability under Labor Law § 200, are all properly for the resolution of the fact finder, not the majority. Certainly, plaintiff has raised sufficient allegations in that regard to preclude summary judgment against him. As the Court of Appeals has aptly stated in *Zimmer v Chemung County Performing Arts* (65 NY2d 513, 520-521):

"We begin our analysis by again observing that the legislative history of the Labor Law, particularly sections 240 and 241, makes clear the Legislature's intent to achieve the purpose of protecting workers by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 407), instead of on workers, who 'are scarcely in a position to protect themselves from accident' *(Koenig v Patrick Constr. Co.,* 298 NY 313, 318).

"We gave early recognition to this legislative intent when we declared with respect to section 240, which was then substantially in its present form, that 'this statute is one for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed' *(Quigley v Thatcher,* 207 NY 66, 68, quoted in *Koenig v Patrick Constr. Co., supra,* at p 319)."

The doctrine of liberal construction was reiterated in *Bland v Manocherian* (66 NY2d 452). The majority, however, by granting summary judgment against plaintiff, have chosen not to follow the standard enunciated by the Court of Appeals, and, instead, rationalize dismissal of this action by incorrectly applying a principle of strict construction.