Breslin v Access Auto Sales & Serv., LLC (2025 NY Slip Op 03615)

Breslin v Access Auto Sales & Serv., LLC

2025 NY Slip Op 03615

Decided on June 12, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 12, 2025

CV-24-0687
[*1]Matthew M. Breslin et al., Respondents-Appellants,
v
Access Auto Sales and Service, LLC, et al., Appellants-Respondents.

Calendar Date:April 21, 2025

Before:Egan Jr., J.P., Reynolds Fitzgerald, Fisher, Powers and Mackey, JJ.

Burke, Scolamiero & Hurd, LLP, Albany (Monique B. McBride of counsel), for Access Auto Sales and Service, LLC, appellant-respondent.
Phelan, Phelan & Danek, LLP, Albany (John J. Phelan of counsel), for National Grid USA Service Co. Inc. and others, appellants-respondents.
Law Firm of Alex Dell, PLLC, Albany (Samantha M. Holbrook of counsel), for respondents-appellants.

Egan Jr., J.P.
Cross-appeals from an order of the Supreme Court (Richard McNally Jr., J.), entered March 29, 2024 in Rensselaer County, which, among other things, (1) denied defendants' motions for summary judgment dismissing the complaint, and (2) denied plaintiffs' motion for summary judgment on the issue of liability.
Plaintiff Matthew Breslin (hereinafter Breslin), a cable technician, was injured on March 26, 2018, while installing new cable telephone, television and Internet service at the offices of defendant Access Auto Sales and Service, LLC on Fuller Road within Albany County. Breslin's employer was a subcontractor of the service provider, defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC (hereinafter collectively referred to as Spectrum), that was tasked with performing the installation work. The work required Breslin to use a 28-foot extension ladder to reach the "feeder cable" that was strung from the utility poles outside the business, poles that were owned by defendant Niagara Mohawk Power Corporation, doing business as National Grid, but upon which Spectrum had an agreement to string its cables. Breslin would splice a new cable into the feeder cable, climb down the ladder and run the new cable back to the back corner of the Access Auto building, where he would attach the cable to the access point where the previous provider's wiring was installed and do whatever work was necessary to hook up the new service inside. Breslin never made it back to the building. Although he does not remember what occurred, the record reflects that he fell from the ladder after splicing the new cable and that he sustained serious injuries.
Breslin and his wife, derivatively, commenced this action against Access Auto, Spectrum, and Niagara Mohawk as well as defendants National Grid USA Service Co. Inc. and National Grid USA (hereinafter collectively referred to as National Grid). Plaintiffs alleged causes of action sounding in Labor Law §§ 240 (1) and 241 (6), as well as Labor Law § 200 and common-law negligence. Defendants answered and cross-claimed for indemnification and/or contribution against each other, after which the matter proceeded through discovery.[FN1] National Grid and Spectrum then moved together for summary judgment dismissing the complaint and cross-claims against them, and Access Auto separately did so. Plaintiffs cross-moved for partial summary judgment as to the issue of liability. Supreme Court, discerning numerous questions of fact, denied the motions in all respects. All parties appeal.
First, Supreme Court correctly declined to award anyone summary judgment on plaintiffs' Labor Law § 240 (1) claim. Labor Law § 240 (1) requires that contractors, owners and their agents provide elevation-related safety devices that are "so constructed, placed and operated as to give proper protection to" any laborer engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure[*2]," and a failure to do so results in liability for any injuries proximately caused thereby (see Burgos v Darden Rests., Inc., 234 AD3d 1037, 1038 [3d Dept 2025]; Silvia v Bow Tie Partners, LLC, 77 AD3d 1143, 1144 [3d Dept 2010]). The proof submitted by defendants in support of their motions reflected that the installation of new service at Access Auto required Breslin to splice a new wire off of the "feeder cable" strung along the utility poles outside and run that wire to a corner of the building, where he would attach it to the building. Breslin would then have to do some degree of exterior and interior work on the building before he could hook up the new service inside. Notwithstanding the efforts of defendants to argue otherwise, this proof reflects that Breslin's work involved "sufficiently significant changes to constitute alteration of" a building or structure to bring it within the ambit of Labor Law § 240 (1) (Randall v Time Warner Cable, Inc., 81 AD3d 1149, 1151 [3d Dept 2011]; see Joblon v Solow, 91 NY2d 457, 465 [1998]; Smith v Pergament Enters. of S.I., 271 AD2d 870, 871 [3d Dept 2000]; Bedassee v 350 Snyder Ave. Owners Corp., 266 AD2d 250, 250-251 [2d Dept 1999]; compare Cooper v Time Warner Entertainment-Advance/Newhouse Partnership, 16 AD3d 1037, 1038 [4th Dept 2005]).
As for whether defendants failed to comply with their obligations under the statute, there is no dispute that Breslin was provided with an extension ladder and a safety belt by his employer, and whether they "provided proper protection within the meaning of Labor Law § 240 (1) is ordinarily a question of fact, except in those instances where the unrefuted evidence establishes that the device [in question] collapsed, slipped or otherwise failed to perform its function of supporting the worker and his or her materials" (Canino v Electronic Tech. Co., 28 AD3d 932, 933 [3d Dept 2006] [internal quotation marks and citation omitted]; see Williams v General Elec. Co., 8 AD3d 866, 867 [3d Dept 2004]). In that regard, although Breslin could not remember the accident or what led up to it, he explained in his deposition testimony that his practice was to wear the safety belt while using the extension ladder and that he would tie off the belt to either a utility pole or the hard wire running between poles while he was working. He further stated in the affidavit submitted in support of his own motion that he had to detach the safety belt in order to climb up or down the ladder. Breslin also described in his testimony how he would secure the ladder to a utility pole to prevent it from moving if he was working near a utility pole, but he did not explain how the ladder would be secured if he was working on a portion of the wires away from one of the poles.
Beyond Breslin's own statements, the trainee who was working with him that day described in a brief affidavit how Breslin was not working near a utility pole at the time of the accident and that the ladder was "hooked in place [*3]in the middle of the cable." The trainee did not explain whether or how the bottom of the ladder was secured and, while he claimed to have witnessed the accident, he gave no detail as to how it occurred aside from stating that Breslin "suddenly lost his balance" while climbing down the ladder and fell 10 or 15 feet to the ground. Breslin's wife called that account into question by averring that the trainee had visited plaintiffs' home after the accident and flatly told them that "he did not see [Breslin] fall and he did not know what happened to cause [Breslin] to fall." In any event, one of the owners of Access Auto corroborated the trainee's account in some respects, testifying that he came outside shortly after the accident to find an injured Breslin on the ground "right below" a ladder that was still upright and hooked to a cable running between utility poles. The owner also testified that he spoke to Spectrum employees who arrived later that day and that, in contrast to Breslin's account, they assured him that installation workers were provided with a safety harness and that Breslin would not have fallen had he hooked it in appropriately.
Suffice it to say, the foregoing proof raises more questions than it answers as to how Breslin set up the safety equipment provided to him and whether there was any problem with that equipment that led to the accident, leaving open the possibilities, among other things, that the equipment functioned properly and Breslin simply lost his balance or that the ladder itself shifted in some manner because it was not properly secured. "The simple fact that [Breslin] fell from a ladder does not automatically establish liability on the part of defendants," and we agree with Supreme Court that questions of fact exist here as to the "adequacy of the safety devices provided [to Breslin], as well as the proximate cause of [his] injuries," precluding summary judgment to any party on the Labor Law § 240 (1) claim (Beardslee v Cornell Univ., 72 AD3d 1371, 1372 [3d Dept 2010]; see Ortman v Logsdon, 121 AD3d 1388, 1390 [3d Dept 2014]; Grogan v Norlite Corp., 282 AD2d 781, 782-783 [3d Dept 2001]; Briggs v Halterman, 267 AD2d 753, 755 [3d Dept 1999]).[FN2]
As for plaintiffs' claim under Labor Law § 241 (6), that statute imposes a duty on "contractors and owners and their agents" to "provide reasonable and adequate protection and safety" to those performing "construction, excavation or demolition work" (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). The alterations that were part of the installation process here constituted construction work within the meaning of that statute (see 12 NYCRR 23-1.4 [b] [13]) but, to prevail, plaintiffs had to further show "the violation of a regulation setting forth a specific standard of conduct applicable to the working conditions which existed at the time of the injury and that the violation was the proximate cause of the injury" (Morin v Heritage Bldrs. Group, LLC, 211 [*4]AD3d 1138, 1142 [3d Dept 2022] [internal quotation marks and citations omitted]; accord James v Marini Homes, LLC, 234 AD3d 1078, 1080 [3d Dept 2025]). Plaintiffs here claimed the violations of a regulation requiring that harnesses and other safety devices be provided to prevent falls greater than five feet (see 12 NYCRR 23-1.16 [b]) and another requiring that ladders be secured either by a person holding it in place at the bottom or by mechanical means if the work is being performed more than 10 feet above the ladder's footing (see 12 NYCRR 23-1.21 [b] [4] [iv]). As noted above, the proof is far from clear as to whether either of those regulations was violated or, if they were, whether the alleged violations were the proximate cause of the accident. Supreme Court, as a result, correctly determined that no party was entitled to summary judgment on the Labor Law § 241 (6) claim (see Torres v New York City Hous. Auth., 199 AD3d 852, 854-855 [2d Dept 2021]; cf. Deshields v Carey, 69 AD3d 1191, 1194 [3d Dept 2010]).
Turning to plaintiffs' Labor Law § 200 and common-law negligence claims, Labor Law § 200 codifies the common-law duty imposed upon owners and general contractors to provide a safe place to work, and violations of that duty "fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed" (James v Marini Homes, LLC, 234 AD3d at 1081 [internal quotation marks and citations omitted]; see Chowdhury v Rodriguez, 57 AD3d 121, 128 [2d Dept 2008]). "Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident" (Ortega v Puccia, 57 AD3d 54, 61 [2d Dept 2008] [citations omitted]). A claim arising out of alleged defects or dangers in the manner in which the work was done, in contrast, demands supervisory control over the work by the owner or general contractor, and "mere general supervisory authority at a work site for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability under Labor Law § 200" (id. at 62; see Ross v Curtis-Palmer Hydro-Electric Co., 81 NY2d at 505; Allen v Cloutier Constr. Corp., 44 NY2d 290, 299 [1978]).
Here, there is no dispute that National Grid had no connection at all to the installation work performed by Breslin and that Spectrum had no one on site to supervise him when he was doing it. Defendants also came forward with proof, including deposition testimony from Access Auto's owner and Spectrum's director of field operations, that Access Auto had no supervisory control over Breslin and that Spectrum played next to no role in overseeing its subcontractors' installation work beyond a general authority to inspect [*5]after the fact that would not give rise to liability under Labor Law § 200. Further, the owner of Access Auto and a project manager at National Grid left no doubt in their testimony that Access Auto and National Grid lacked actual or constructive notice of any dangerous or defective condition on the utility poles or the property itself that might have contributed to the accident. Defendants accordingly met their initial burden upon their motions for summary judgment and, in response, plaintiffs offered nothing beyond the conclusory assertion that defendants had the authority to control Breslin's work. This was insufficient to raise a material question of fact and, as a result, defendants were entitled to summary judgment dismissing the Labor Law § 200 and common-law negligence claims against them (see Persichilli v Triborough Bridge & Tunnel Auth., 16 NY2d 136, 146-147 [1965]; Wheeler v Citizens Telecom. Co. of N.Y., Inc., 74 AD3d 1622, 1623-1624 [3d Dept 2010]; Rapp v Zandri Constr. Corp., 165 AD2d 639, 642 [3d Dept 1991]).
Finally, we agree with Access Auto that it was entitled to summary judgment dismissing the cross-claims against it for indemnification and/or contribution. The record is devoid of any evidence that Access Auto was negligent in the leadup to Breslin's accident and, as noted above, Access Auto should have been granted summary judgment dismissing plaintiffs' common-law negligence claim against it. Access Auto therefore "demonstrated its entitlement to the dismissal of [the] cross[-]claims against it for common-law indemnification and contribution by showing that it was free from negligence and only vicariously liable," and the other defendants offered nothing to raise a triable issue of fact on that point (Royland v McGovern & Co., LLC, 203 AD3d 677, 679 [1st Dept 2022]; see Biance v Columbia Washington Ventures, LLC, 12 AD3d 926, 927 [3d Dept 2004]; compare Husted v Central N.Y. Oil & Gas Co., LLC, 68 AD3d 1220, 1223 [3d Dept 2009]). To the questionable extent that a cross-claim for contractual indemnification was actually asserted against Access Auto by any of the other defendants, the absence of any negligence on Access Auto's part is similarly fatal to it (see Jamindar v Uniondale Union Free School Dist., 90 AD3d 612, 616-617 [2d Dept 2011]; Turner v Sano-Rubin Constr. Co., 6 AD3d 910, 911-912 [3d Dept 2004]). Thus, Supreme Court should have granted that part of Access Auto's motion seeking summary judgment dismissing the cross-claims against it for contribution and/or indemnification.
To the extent that the parties' contentions are not addressed above, they have been considered and found to be unavailing.
Reynolds Fitzgerald, Fisher, Powers and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied the motions of defendants for summary judgment dismissing the complaint insofar as it asserted causes of action against them based upon Labor Law § 200 and [*6]common-law negligence and the motion of defendant Access Auto Sales and Service, LLC for summary judgment dismissing the cross-claims against it for contribution and/or indemnification; motions granted to that extent and said claims and cross-claims dismissed; and, as so modified, affirmed.

Footnotes

Footnote 1: Defendant Charter Communications, Inc. also commenced a third-party action against Breslin's employer that was subsequently discontinued.

Footnote 2: Although Breslin's memory loss and the questions as to whether the trainee actually saw the accident leave open the possibility that a jury might conclude that no credible firsthand account of the accident exists, "the precise manner in which this accident occurred need not be established for liability to be found" since the circumstances in which Breslin was found in the immediate aftermath of the accident left little question that he was injured when he fell off the ladder (Nudi v Schmidt, 63 AD3d 1474, 1476 [3d Dept 2009]).