HOWARD D. SPRAGUE, Appellant, v LOUIS PICCIANO, INC., et al., Respondents. (And Third-Party and Fourth-Party Actions.)

Third Department, March 29, 1984

### APPEARANCES OF COUNSEL

*John S. Hall, P.C.* (*John S. Hall, Jr.,* of counsel), for appellant.

*McPhillips, Fitzgerald, Meyer & McLenithan* (*Martin A. Meyer* of counsel), for Louis Picciano, Inc., respondent.

*Holcombe & Dame* (*Norman J. Dame* of counsel), for L. J. Kennedy, respondent.

**OPINION OF THE COURT**

WEISS, J.

On September 26, 1977, while employed by the State of New York working on a ski chairlift at Whiteface Mountain, plaintiff was ordered to help unload a flatbed truckload of steel pipe sold by defendant Louis Picciano, Inc., and delivered to the purchaser, the State, by defendant L. J. Kennedy. During unloading, the pipes slid off the truck causing plaintiff to sustain serious injuries. In his pleadings, plaintiff alleges that defendant Picciano had failed to establish a safe work site as a contractor (Labor Law, § 241, subd 6), and a second and third cause of action against defendant Kennedy couched in negligence. At the conclusion of plaintiff's proof, the trial court denied his motion for a directed verdict and granted both defendants' CPLR 4401 cross motions to dismiss the complaint. Separate judgments in favor of each defendant were subsequently entered.

On this appeal, plaintiff first seeks to establish liability under subdivision 6 of section 241 of the Labor Law by linking defendant Picciano's contract with the State to furnish steel pipe with its general contract to excavate and install snow-making equipment, which included the pipe as part of the snow-making machinery.[1] Specifically, plaintiff argues that the nondelegable duty of a contractor to provide a safe and reasonable site where excavation was performed as part of the over-all construction (Labor Law, § 241, subd 6) was imposed upon Picciano and extended to Whiteface Mountain parking lot number five where the pipe was to be unloaded. Relying on *Haimes v New York Tel. Co.* (46 NY2d 132), *Allen v Cloutier Constr. Corp.* (44 NY2d 290) and *Long v Forest-Fehlhaber* (55 NY2d 154),

---

1. Plaintiff initially sued Picciano as Louis Picciano, Inc. It appears Louis Picciano, Sr. Corporation is the correct name of the contractor which installed the snow-making equipment. A related company which is not a corporation, Louis N. Picciano and Son, was the vendor of the pipe. The contract to sell pipe was assigned by that selling entity to Louis Picciano, Sr. Corporation.

plaintiff urges that since Picciano was a general contractor, with workers, equipment and a mobile office on the site, an absolute nondelegable duty was imposed upon it by statute to provide suitable equipment and safety measures for the unloading of the pipes.

■ We disagree and affirm the judgment dismissing the action against defendant Picciano entered March 22, 1983 for the reasons which follow. The record supports the conclusion that the contract to sell pipe to the State was separate and distinct from the construction contract to install snow-making equipment. The former was obtained through competitive bidding and provided that the price for pipe would "be net, f.o.b. Encon, Wilmington NY. Agency will unload material". The proof shows that the State selected and designated one of its parking lots for unloading and provided both manpower and equipment to perform the unloading. From this proof, it is clear that there was no link between Picciano's role as general contractor and as supplier of materials sold to the State. Inasmuch as the supply contract imposed no duty on Picciano to either unload or supervise the unloading, no liability accrued on this basis.

■ Nor do we find Picciano liable as a general contractor under subdivision 6 of section 241 of the Labor Law. We recognize that this section imposes a nondelegable duty on owners and general contractors for a breach of the requirements of the statute, irrespective of their control or supervision of the work site (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 300, *supra*). The issue here is whether a location, not necessarily within the immediate construction/excavation site, at which materials to be used in the construction/excavation are unloaded and stored until used, is an "area" within the scope of the statute. Under subdivision 6 of section 241 of the Labor Law, liability extends to "[a]ll *areas* in which construction, excavation or demolition *work is being performed*"[2] (emphasis added). Where the material is placed within the excavation as an integral part of the construction/excavation work, it is clear that

---

**2.** It should be noted that the work being performed, i.e., unloading materials from a truck, could rightfully be called "construction * * * work" within the meaning of subdivision 6 of section 241 of the Labor Law (see, e.g., *Ackley v Vitale Bros. Contrs.*, 80 AD2d 989).

subdivision 6 of section 241 is applicable (*Kemp v Lakelands Precast,* 84 AD2d 630, mod 55 NY2d 1032; *Ploof v B. I. M. Truck Serv.,* 53 AD2d 750, mot for lv to app den 40 NY2d 803). Moreover, the proximity of material or equipment to the actual construction site is not necessarily dispositive of whether liability exists away from the site, where a showing is made that the material or equipment is being readied for use in connection with the construction/excavation (see *La France v Niagara Mohawk Power Corp.,* 89 AD2d 757, 758, n, app dsmd 58 NY2d 747; *Struble v John Arborio, Inc.,* 74 AD2d 55, 57).

This record, however, is devoid of proof that parking lot number five was either contained within, contiguous to, or an integral part of the site upon which the snow-making equipment was to be installed on Whiteface Mountain. In contrast to the *Kemp* case (*supra*), there has been no showing that the unloading of the pipe was an integral part of the construction-excavation work. Picciano's general manager testified that the pipe which caused plaintiff's injuries was being stored for eventual use in the construction of snow-making equipment. To be contrasted is the situation in *La France* (*supra*), where the plaintiff's decedent was injured while working, approximately one quarter of a mile from the construction site, on a crane being readied for immediate use. In our view, the parking lot in which plaintiff was injured does not qualify as an "area * * * in which construction, excavation or demolition work is being performed". That products to be utilized in the excavation were stored in the parking lot does not, of itself, transform the lot into a work area within the scope of subdivision 6 of section 241 of the Labor Law. While we recognize that subdivision 6 of section 241 is to be liberally construed to protect workers engaged in hazardous occupations, it may not be so implemented by decisional law as to establish a cause of action and right of recovery not contemplated by the Legislature (see *DaBolt v Bethlehem Steel Corp.,* 92 AD2d 70, 75). Accordingly, we agree with the trial court's conclusion that plaintiff failed to establish a prima facie case against Picciano of a violation of subdivision 6 of section 241 of the Labor Law as a matter of law.

We reach a different conclusion with respect to defendant Kennedy. Unlike the case against Picciano, the com-

plaint against Kennedy is rooted in negligence. The record shows that Kennedy's driver checked the load prior to making the delivery and secured the bundles of pipe to the flatbed using nylon straps. Once at the delivery site, the driver removed the nylon straps and returned to the cab of his truck without warning plaintiff of the absence of wood spacer bars between the two tiers of pipe. Plaintiff's expert testified that it was standard practice in the industry for pipe to be transported in bundles separated by wood spacers, and that a failure to do so rendered the load unsafe. In our view, where a carrier has the opportunity to observe an obvious defect in the loading of materials, it has a duty to either correct the defect or at least warn others who might be affected (see 17 NY Jur 2d, Carriers, § 286, pp 341-342; cf. *Lewis v New York, Ontario & Western Ry. Co.,* 210 NY 429, 431). While there is no evidence in the record that Kennedy was negligent in the actual loading or unloading of the pipe, a question of fact exists as to whether Kennedy breached a duty to plaintiff to perceive and warn of the improperly loaded materials. As such, the trial court erred in granting Kennedy's CPLR 4401 motion for judgment in its favor.

The judgment entered March 15, 1983 should be reversed, on the law, without costs, the complaint against defendant L. J. Kennedy reinstated, and the matter remitted to Supreme Court for a new trial.

The judgment entered March 22, 1983 should be affirmed, without costs.

CASEY, J. (concurring in part and dissenting in part). Assuming that the trucker had a duty to warn plaintiff of the absence of spacers between the bundles of pipe, the record establishes that the trucker's breach of such a duty was not a proximate cause of plaintiff's injuries. Accordingly, we would affirm the judgment dismissing plaintiff's complaint against the trucker, defendant L. J. Kennedy.

Plaintiff was injured while he and his co-workers were unloading the second bundle of pipe. They had successfully unloaded the first bundle, but not without encountering some difficulty due to the absence of spacers. They again encountered difficulty due to the absence of spacers when they tried to unload the second bundle, and plaintiff's

injuries were sustained while he and his co-workers were attempting to overcome the problems created by the lack of spacers. The record establishes that plaintiff and his co-workers were well aware of the absence of the spacers and the dangers created thereby. A warning from the trucker would have been superfluous. Thus, while the absence of spacers, for which the trucker was not responsible, may have been a proximate cause of plaintiff's injuries, the trucker's failure to warn of the lack of spacers was not a factor in plaintiff's injuries since he and his co-workers were well aware of the danger before the accident occurred.

MAHONEY, P. J., and KANE, J., concur with WEISS, J.; CASEY and LEVINE, JJ., concur in part and dissent in part in an opinion by CASEY, J.

Judgment entered March 15, 1983 reversed, on the law, without costs, complaint against defendant L. J. Kennedy reinstated, and matter remitted to Supreme Court for a new trial.

Judgment entered March 22, 1983 affirmed, without costs.