Gregory POULIN, Plaintiff,

v.

E.I. DuPONT DeNEMOURS and Company, et al., Defendants.

No. 92–CV–0414A.

United States District Court, W.D. New York.

Nov. 23, 1994.

Russell T. Quinlan, Paul William Beltz, P.C., Buffalo, NY, for plaintiff.

Paul F. Jones, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for defendants.

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on July 21, 1992. On June 1, 1994, defendants filed a motion for summary judgment. On October 19, 1994, Magistrate Judge Heckman filed a Report and Recommendation granting defendants' motion for summary judgment.

On November 18, 1994, plaintiff filed a notice of motion, pursuant to Fed.R.Civ.P. 6(b) and 72(b), for an extension of time to file and serve objections to Magistrate Judge Carol E. Heckman's Report and Recommendation. Under 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b) and Local Rule 30(a), plaintiff was required to file his objections within ten days after receipt of the Report and Recommendation. This ten day requirement is also expressly stated in the Magistrate Judge's Report and Recommendation. According to plaintiff's calculations in his motion, he was required to file his objections no later than November 10, 1994.

"The granting or denial of a motion to extend the time for objection to a magistrate's recommendation lies within the discretion of the district court." *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir.1988). If such a motion is made after the expiration of the ten day deadline for objections, the movant is required to show that "the failure to act was the result of excusable neglect." *Id.* at 58 (quoting Fed.R.Civ.P. 6(b)).

In this case, plaintiff's motion for an extension of time fails to demonstrate adequately "excusable neglect" for failing to ask for an extension earlier. Plaintiff's motion for an extension was not filed until some eight days after the deadline for objections had passed. The only excuse offered by plaintiff for failing to act earlier is that his attorneys had other commitments, and were not able to focus their attention on the Report and Recommendation prior to the expiration of the ten day deadline. Counsel's other commitments, however, do not constitute "excusable neglect." The Court cannot and will not allow parties and their attorneys to disregard the Federal Rules of Civil Procedure and this Court's orders simply because they are too busy to comply. Accordingly, the Court denies plaintiff's motion for an extension of time to file objections because the motion is untimely.

The Court, having carefully reviewed the Report and Recommendation, as well as the record and the materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants' motion for summary judgment is granted and the case is dismissed in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by Hon. Richard J. Arcara to hear and report on all dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B). Defendants have moved for summary judgment dismissing the complaint. For the following reasons, it is recommended that defendants' motion be granted.

### BACKGROUND

Plaintiff commenced this action in state court on May 22, 1992 to recover damages for personal injury suffered in an accident that occurred on October 30, 1991 at the Niagara Falls, New York plant of defendant E.I. DuPont DeNemours & Company, Inc. ("DuPont"). DuPont removed the case to federal court on June 29, 1992, alleging di-

versity of citizenship based on plaintiff's Canadian residence (Item 1).

In his amended complaint (Item 17), plaintiff alleges that at the time of the accident DuPont had a contract with defendant Morrison Knudsen Corporation ("Morrison Knudsen") to provide engineering and technical services at DuPont's facility on Buffalo Avenue in Niagara Falls. Plaintiff was an employee of Nicholson & Hall Corporation ("Nicholson & Hall"), which had a contract with DuPont to perform "boiler repair work" at the Niagara Falls plant (Item 31, Ex. F).

On the day of the accident, plaintiff reported to work at Nicholson & Hall's shop on Columbia Street in Buffalo, New York. He was told by his supervisor, Gary Golembiewski, to report to DuPont's Niagara Falls plant to clean a condenser unit with Leonard Jankowski, another Nicholson & Hall employee. Plaintiff and Jankowski arrived at DuPont at approximately 8:00 a.m. They went to a trailer on the premises and reported to Sam Snyder, Morrison Knudsen's quality assurance manager (Item 31, Ex. K, pp. 31–33). At the trailer, plaintiff and Jankowski attended a safety orientation program along with several other outside contractors. The orientation consisted of a short video presentation and oral discussion addressing DuPont's general safety procedures for working in a chemical manufacturing plant. The orientation lasted approximately forty-five minutes (Item 31, Ex. L, pp. 26–27).

After the orientation, plaintiff and Jankowski remained in the trailer for the rest of the morning awaiting further instructions for the work to be performed on the condenser unit. At approximately 1:30 p.m., a truck arrived from Nicholson & Hall carrying the tools that would be used for cleaning the condenser. Plaintiff and Jankowski then proceeded to the building where the condenser unit was located (Item 31, Ex. K, p. 38).

The condenser unit is approximately 19 feet long and 54 inches in diameter. It is one of the primary condensers used by DuPont in the process of turning gaseous chlorine into liquid (Item 31, Ex. J, pp. 25–26, 49–50). When plaintiff and Jankowski arrived at the work site, the condenser head had been removed, exposing a "honeycomb"

arrangement of several tubes covered by a "mucky" substance (Item 36, Poulin Aff., p. 47). The two men began cleaning the inside of the condenser tubes using a "turbining" method. This method utilized a metal rod, approximately three-eighths of an inch in diameter and 15 feet long, attached to a small electric motor, with a small wire brush attached to the other end of the rod (Item 31, Ex. M, pp. 22–23). Plaintiff held the motor end of the rod while Jankowski guided the brush end of the rotating rod into and out of the condenser tubes, using both hands. Jankowski wore work gloves with leather palms (Item 31, Ex. L, p. 43).

Plaintiff and Jankowski continued cleaning the tubes in this manner until approximately 5:00 or 5:30 p.m., when Jankowski left for the day. At approximately 6:30 p.m., Nicholson & Hall employee Skip Evans arrived to replace Jankowski. Plaintiff and Evans resumed work cleaning the condenser tubes, with Evans holding the motor end of the rod and plaintiff guiding the rod in and out of the tubes (Item 31, Ex. K, pp. 63–66). Plaintiff was wearing tight-fitting leather gloves (*id.* p. 53).

At approximately 7:30 p.m., plaintiff's leather gloves became saturated from the cleaning process. He noticed several pairs of black rubber gloves in a box near the condenser. He picked up a clean pair and put them on. They were dry, but loose-fitting (*id.*, pp. 54–57, 84). He continued working wearing the rubber gloves, guiding the rotating rod into the condenser tubes with both hands, for another hour and a half (*id.*, p. 69).

At approximately 9:00 p.m. plaintiff was holding the rod with both hands at about the level of his nose, guiding the rotating rod over his left shoulder into a condenser tube, when the brush attached to the end of the rod broke inside the tube. The rod began to rotate at a faster rate, catching the loose-fitting rubber glove on plaintiff's right hand and twisting it around the rod. Plaintiff yelled to Evans, who was approximately six feet from plaintiff. Evans released the motor trigger and manually stopped the rod from spinning. When plaintiff's hand was free, Evans dropped the motor and went

over to plaintiff. He removed the glove from plaintiff's right hand. Plaintiff's right index finger was nearly severed at the middle joint (Item 31, Ex. K, pp. 69–70; Item 36, Evans Aff., pp. 54–55).

Evans took plaintiff first to Niagara Falls Memorial Hospital, and then to Millard Fillmore Hospital in Buffalo, where plaintiff's finger was surgically re-attached (Item 36, Evans Aff., pp. 60–61; Poulin Aff., p. 93). However, approximately two and a half weeks later, the finger was amputated at the middle knuckle (Item 36, Poulin Aff., p. 96).

Plaintiff alleges that the accident was caused by the negligence of DuPont and Morrison Knudsen in failing to provide a safe workplace, equipment and supervision, in violation of New York State Labor Law §§ 200, 240 and 241 and state and federal safety regulations. He claims damages in the amount of $2,000,000.00 based on defendants' negligence, and $3,000,000.00 based on the alleged statutory and regulatory violations.

DuPont and Morrison Knudsen have impleaded Nicholson & Hall as a third-party defendant, alleging contribution and indemnification under the general conditions of the service contract between Nicholson & Hall and DuPont (Item 10).

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 166–

67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. Ann Taylor, Inc., supra*, 933 F.2d at 167.

Defendants DuPont and Morrison Knudsen move for summary judgment dismissing the complaint on the grounds that (1) neither the common law nor the state labor law impose a duty on the defendants to protect against the injuries sustained by plaintiff, and (2) the provisions of the state Labor Law relied on by plaintiff are inapplicable to this case.[1] Each of these grounds will be discussed in turn.

### II. Owner's Duties Under Common Law and Labor Law § 200.

Section 200 of the New York Labor Law provides:

---

1. Defendants also move for summary judgment on the ground that plaintiff's own conduct in voluntarily changing from leather to rubber gloves was the sole superseding proximate cause of the accident. As the discussion in the following text demonstrates, plaintiff has failed to meet

his burden of establishing the elements of his common law and statutory causes of action. Dismissal of the complaint is recommended on this basis, and an inquiry into whether plaintiff's use of the rubber gloves constituted the sole proximate cause of the injury is unnecessary.

898

· All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.

N.Y. Labor Law § 200(1). This provision merely codified the common law duty imposed on an owner or employer to provide workers with a safe place to work. *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 316–17, 445 N.Y.S.2d 127, 429 N.E.2d 805 (1981); *Allen v. Cloutier Constr. Co.*, 44 N.Y.2d 290, 299, 405 N.Y.S.2d 630, 376 N.E.2d 1276 (1978). "The duty is to make the premises safe by the discovery of dangers ascertainable through reasonable diligence and by remedying them or warning against them." *Lagzdins v. United Welfare Fund–Security Division Marriott Corp.*, 77 A.D.2d 585, 586–87, 430 N.Y.S.2d 351, 354 (2nd Dept.1980).

This duty is contingent upon contractual or other authority to control the activity bringing about the injury, *Nowak v. Smith & Mahoney*, 110 A.D.2d 288, 289, 494 N.Y.S.2d 449, 450 (3rd Dept.1985), and "is not breached when the injury arises out of a defect in the subcontractor's own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work." *Perischilli v. Triborough Bridge & Tunnel Auth.*, 16 N.Y.2d 136, 145, 262 N.Y.S.2d 476, 209 N.E.2d 802 (1965); *Allen, supra*. "An implicit precondition to this duty to provide a safe place to work is that the party charged with that responsibility have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Russin, supra*, 54 N.Y.2d at 317, 445 N.Y.S.2d 127, 429 N.E.2d 805.

■ Therefore, liability under § 200 attaches to an owner only when the injury complained of was sustained as the result of an actual dangerous condition in the workplace, as opposed to the manner in which the work was performed, "and then only if the owner exercised supervision or control over the work performed at the site or had actual or constructive notice of the unsafe condition causing the accident." *Whitaker v. Norman*, 146 A.D.2d 938, 939, 536 N.Y.S.2d 916, 918 (3rd Dept.), *aff'd*, 75 N.Y.2d 779, 552 N.Y.S.2d 86, 551 N.E.2d 579 (1989) (citing *Rusin v. Jackson Hgts. Shopping Center*, 27 N.Y.2d 103, 106, 313 N.Y.S.2d 715, 261 N.E.2d 635 (1970), and *Allen, supra* other citations omitted); *Karian v. Anchor Motor Freight, Inc.*, 144 A.D.2d 777, 778, 535 N.Y.S.2d 175, 177 (3rd Dept.1988).

■ The uncontroverted evidence in this case is that the injury to plaintiff occurred as a result of the manner in which the cleaning of the condenser tubes was performed by Nicholson & Hall employees, *not* as a result of any unsafe condition of the workplace provided by or under the control of defendants DuPont or Morrison Knudsen. There is nothing in the record to suggest that defendants had notice of or control over the defective condition of the rod and brush device, or that defendants had notice or control over plaintiff's voluntary use of the rubber gloves kept in a box near the condenser. It is undisputed that the accident occurred when the brush broke off the end of the rotating rod, causing the rod to catch the loose-fitting rubber glove that plaintiff was wearing. The brush broke after approximately eight hours of nearly continuous use. Plaintiff had been operating the rod and brush device the whole time, and had been using the rubber gloves for approximately an hour and a half without incident. It is clear from the record that neither DuPont nor Morrison Knudsen employees could have, with reasonable diligence, discovered the defective condition of the rod and brush device, remedied the defect, or warned plaintiff against its use.

While not specifically alleged in the complaint, plaintiff has referred during discovery to the general condition of the area around the condenser unit where he performed his work. He alleges that the large condenser head, which was removed by employees of

defendants, was placed directly in front of the unit making it difficult to maneuver the rod and brush device. He also alleges that there was scaffolding erected in the area to allow workers access to other condensers and plant machinery, making manipulation of the rod difficult. He also complained about the wet, slippery condition of the floor around the condenser unit.

However, there is no evidence that any of these conditions caused or contributed to plaintiff's injury. Plaintiff's own account of the incident establishes that his injury was caused by the manner in which the work was performed, rather than by any dangerous condition on the premises.

Moreover, under the general conditions of the service contract between DuPont and Nicholson & Hall, "[t]he employees, methods, equipment, and facilities" used by Nicholson & Hall to perform work under the contract remained "at all times ... under [Nicholson & Hall's] exclusive direction and control" (Item 31, Ex. F, ¶ 25). Nicholson & Hall provided the equipment used on the job, and remained responsible at all times for the condition of the equipment. *See, e.g., Perischilli v. Triborough Bridge & Tunnel Auth., supra,* 16 N.Y.2d at 146–47, 262 N.Y.S.2d 476, 209 N.E.2d 802. There is no evidence to suggest that defendants were under any contractual duty to protect plaintiff from defects in the condition of materials and equipment provided by his own employer, to prevent plaintiff from picking up and putting on the rubber gloves, or to warn him that doing so would be unsafe. Neither the common law nor § 200 require an owner or employer "to secure the safety of his servant against a condition, or even defects, risks or dangers that may be readily observed by the reasonable use of the senses, having in view the age, intelligence and experience of the servant." *McLean v. Studebaker Bros. Co.,* 221 N.Y. 475, 478, 117 N.E. 951 (1917).

■ Plaintiff contends that material issues of fact exist as to whether defendants exercised supervision or control over the work site. He claims that he overheard Sam Snyder, Morrison Knudsen's quality assurance manager, suggest the "turbining" method for cleaning the condenser tubes during a telephone conversation with Nicholson & Hall supervisor Gary Golembiewski. He also claims that defendants' employees observed the procedure during the course of the work and had the authority to intervene at any time if they felt the operation was unsafe.

These claims are not sufficient to raise triable issues of fact regarding the degree of supervision and control exercised by defendants. For one thing, an owner or employer does not supervise or control the performance of the work for the purposes of Labor Law § 200 merely "by presenting ideas and suggestions, making observations and inquiries, and inspecting the work." *Stephens v. Tucker,* 184 A.D.2d 828, 829–30, 584 N.Y.S.2d 667, 669 (3rd Dept.1992) (citing cases). Instead, as set forth above, "there must be a showing of control of the site of the injury and notice, actual or constructive, of the unsafe condition." *Karian v. Anchor Motor Freight, Inc., supra,* 144 A.D.2d at 777, 535 N.Y.S.2d 175. In this case, the record is clear that defendants had no contractual duty to supervise or control the work performed by plaintiff. The record is equally clear that the injury occurred not as a result of any condition that defendants could have identified and corrected, but solely as a result of the manner in which the work was performed. Even if defendants could be said to have exercised supervision and control over the work merely by suggesting the method to be used to clean the condenser tubes, plaintiff cannot show that defendants had notice of the unsafe conditions that caused the accident—*i.e.,* the condition of the brush that broke off inside the condenser tube, and plaintiff's voluntary choice to use loose-fitting rubber gloves.

In addition, control or notice is not demonstrated by mere inspection of the site by the owner to make sure that the work was progressing without problems, especially where the subcontractor was contractually obligated to provide all labor and equipment and the work had progressed for several hours without incident. *See Robinson v. New York City Housing Authority,* 152 Misc.2d 597, 599, 578 N.Y.S.2d 387, 388 (Sup.N.Y.Co. 1991).

Moreover, the deposition testimony of Gary Golembiewski and Leonard Jankowski establishes that the motorized rod & brush method was regularly used by Nicholson & Hall employees to clean condenser units prior to the incident at issue, employing one person to hold the motor end of the rod and another to guide the brush end into and out of the condenser tubes (Item 31, Ex. L, pp. 8–12; Ex. M, pp. 22–26). Also, Golembiewski testified that he suggested the rod & brush method, not Snyder (*id.*, Ex. M, p. 92). In light of this testimony, plaintiff's mere "conjecture and surmise" that Snyder suggested the rod & brush method, unsupported by any evidence, does not create a triable issue of fact precluding summary judgment in favor of defendants on plaintiff's Labor Law § 200 claim. *Bryant v. Maffucci, supra*, 923 F.2d at 982.

Plaintiff also contends that defendants exercised control and supervision over the job by requiring the Nicholson & Hall employees to participate in the safety orientation program. However, the evidence is clear that the purpose of the orientation was to advise outside contractors of general safety precautions pertaining to DuPont's work at the plant. The program had nothing to do with cleaning condenser units. Plaintiff's participation in the orientation does not raise a triable issue as to whether defendants had the authority to control or supervise the activity that brought about the injury.

Finally, plaintiff argues that defendants' own post-accident investigation report demonstrates the requisite degree of control and supervision over the work. This court's review of the report (Item 36, Ex. I), however, shows that it supports the conclusion that the accident was caused by the manner in which the work was performed by plaintiff and not by any unsafe condition that could have been discovered or corrected by defendants. The report also indicates that as a result of this accident, defendants initiated corrective measures to make sure that this kind of injury does not occur again. Thus, to the extent that the accident report is submitted to show subsequent remedial measures, it is "not admissible to prove negligence or culpable conduct in connection with the event . . . ," and

should not be considered by the court on this summary judgment motion. Fed.R.Evid. 407; *Krasnopolsky v. Warner–Lambert Co.*, 799 F.Supp. 1342, 1348 (E.D.N.Y.1992); *Camporeale v. Airborne Freight Corp.*, 732 F.Supp. 358, 364 (E.D.N.Y.), *aff'd*, 923 F.2d 842 (2d Cir.1990).

In sum, after extensive discovery, the evidence establishes that the injury to plaintiff occurred as a result of the method and equipment used by Nicholson & Hall employees to clean the condenser tubes, not as a result of any condition of the workplace that was under defendants' control or of which defendants had notice. Defendants simply had no duty or ability to discover the defective condition of plaintiff's equipment or to control plaintiff's voluntary use of rubber rather than leather gloves. "Without this authority to control the activity producing the injury, defendants could not be liable to plaintiff under section 200 for failure to provide a safe work place." *Russin v. Picciano & Son, supra*, 54 N.Y.2d at 317, 445 N.Y.S.2d 127, 429 N.E.2d 805.

Accordingly, plaintiff has failed to come forward with any proof that would support a jury verdict in his favor on his common law negligence or Labor Law § 200 claims. Defendants' motion for summary judgment dismissing those claims should be granted.

### III. Inapplicability of Labor Law § 241(6).

New York Labor Law § 241 provides in relevant part:

> All contractors and owners and their agents . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> \* \* \* \* \* \*
>
> 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the

provisions of this subdivision, and the owners and contractors and their agents for such work ... shall comply therewith. N.Y.Labor Law § 241(6). This section imposes a nondelegable duty on the owners of property, and makes them responsible for damages to persons injured because of violations of the statute, irrespective of the owner's control of the work being done. *Adkins v. Trezins,* 920 F.2d 164, 166 (2d Cir.1990); *Long v. Forest–Fehlhaber,* 55 N.Y.2d 154, 159–60, 448 N.Y.S.2d 132, 433 N.E.2d 115 (1982).

By its terms, the requirements of this section apply only to the performance of construction or demolition work, or to excavation performed in connection with construction or demolition activities. *Whitaker v. Norman, supra,* 146 A.D.2d at 939, 536 N.Y.S.2d at 917; *see also Mosher v. State of New York,* 80 N.Y.2d 286, 590 N.Y.S.2d 53, 604 N.E.2d 115 (1992)(§ 241(6) not limited to building construction; applies to state highway repaving project). Under the general provisions of Part 23 of the New York State labor regulations, "construction work" is defined as follows:

> All work of the types performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures, whether or not such work is performed in proximate relation to a specific building or other structure and includes, by way of illustration but not by way of limitation, the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, cleaning of the exterior surfaces including windows of any building or other structure under construction, equipment installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose.

12 N.Y.C.R.R. § 23–1.4(13). "Demolition work" is defined as "work incidental to or associated with the total or partial dismantling or razing of a building or other structure including the removing or dismantling of machinery or other equipment." 12 N.Y.C.R.R. § 23–1.4(16). "Excavation work" is defined as "[t]he removal of earth, rock or other material in connection with construction or demolition operations." 12 N.Y.C.R.R. § 23–1.4(19).

Plaintiff contends that the work he was performing on the condenser unit located on defendants' property was "repair" or "maintenance" of a "structure" within the protection of § 241(6). He argues that the condenser maintenance project included the dismantling, cleaning and retubing of the unit, which constitutes construction or demolition work under the regulatory definitions. However, New York courts interpreting this section have focused on the actual nature of the activity in which the plaintiff was engaged at the time of the alleged injury to determine whether that activity could be construed as "construction, excavation or demolition work" entitled to the statute's protection. Thus, while recognizing that § 241(6) must be "liberally construed to protect workers engaged in hazardous occupations, it may not be so implemented by decisional law as to establish a cause of action not contemplated by the Legislature." *Sprague v. Louis Picciano, Inc.,* 100 A.D.2d 247, 250, 474 N.Y.S.2d 591, 594–95 (3rd Dept.), *appeal denied,* 62 N.Y.2d 605, 479 N.Y.S.2d 1026, 467 N.E.2d 895 (1984).

In *Sprague,* the plaintiff was injured while helping to unload steel pipe from a flatbed truck. The pipe was being unloaded and stored in a parking lot, and was to be installed later in excavations at a ski resort as part of the resort's snowmaking machinery. The Appellate Division found that § 241(6) did not apply because the parking lot was located away from the excavation site where the actual work was to be done, and the proof did not show that the unloading of the pipe was an integral part of the construction or excavation work. 474 N.Y.S.2d at 594.

More on point is *Warsaw v. Eastern Rock Products, Inc.,* 193 A.D.2d 1115, 599 N.Y.S.2d 207 (4th Dept.1993), in which the plaintiff was injured in his shop while repairing a stone crushing machine. The court dismissed his § 241(6) claim, finding that he was injured while engaged in "normal" repair work on a machine, "a task not a part of any construction project or any renovation or al-

teration" to the building in which the machine was located. *Id.,* 193 A.D.2d at 1115, 599 N.Y.S.2d at 208.

Similarly, in *Jock v. Fien,* 80 N.Y.2d 965, 590 N.Y.S.2d 878, 605 N.E.2d 365 (1992), the plaintiff was injured when he fell from an upright steel mold used during fabrication of a concrete septic tank at his employer's factory. The Court of Appeals found that this "customary occupational work" was beyond the scope of § 241(6) since, "[a]t the time of the accident, the injured plaintiff was not engaged in any construction or sewer project and was not involved in renovation or alteration work on the factory." *Id.* at 968, 590 N.Y.S.2d 878, 605 N.E.2d 365.

Plaintiff argues that these cases are distinguishable because the injuries occurred on the premises of the employer rather than on the premises of a third party owner. However, the clear import of *Jock v. Fien* and *Warsaw v. Eastern Rock Products, Inc.* is that the nondelegable duty to protect workers imposed by § 241(6) should only be enforced where the work being performed when the injury took place had to do with changing the structural quality of a building or structure in some way. *See, e.g., Malczewski v. Cannon Design, Inc.,* 125 A.D.2d 941, 942, 510 N.Y.S.2d 339, 339–40 (4th Dept. 1986). There is no discussion regarding the location of the construction work, and none of the cases relied on by either side have turned on the kind of "premises" analysis urged here by plaintiff. Indeed, the clear language of the statute and the definitional regulations indicates that the protection of § 241(6) is not limited to construction, demolition or excavation work performed away from the employer's shop, but instead applies to "all areas" in which such work is being performed, "whether or not such work is performed in proximate relation to a specific building or other structure." 12 N.Y.C.R.R. § 23–1.4(13).

The uncontroverted evidence in this case is that, at the time of his injury, plaintiff was engaged in one of the customary activities of his trade as a boilermaker—cleaning condenser units. This work was performed so that the condenser could properly function as part of DuPont's chlorine manufacturing process. Plaintiff's work was not even remotely involved with any construction, demolition, excavation, renovation or other structural alteration of either the building in which the condenser unit was housed or the unit itself. The record clearly indicates that any dismantling or reassembling of the condenser was done by defendants' employees, or someone other than plaintiff. Therefore, plaintiff does not have a cause of action for violation of § 241(6), or any of the rules or regulations promulgated under the authority of that section.

The cases cited by plaintiff in support of his § 241(6) claim do not require a different result, since those cases clearly involved construction or excavation work in which the building or facility was being structurally altered in some way (*see, e.g., Ackley v. Vitale Bros. Contractors, Inc.,* 80 A.D.2d 989, 437 N.Y.S.2d 805 (4th Dept.1981) (construction of plug in abandoned mine)); *Tilkens v. City of Niagara Falls,* 52 A.D.2d 306, 383 N.Y.S.2d 758 (4th Dept.1976) (excavation work), or clearly involved injury covered by the "scaffold" provision of N.Y. Labor Law § 240 (*see, e.g., Caddy v. Interborough Rapid Transit Co.,* 195 N.Y. 415, 88 N.E. 747 (1909); *Mosher v. St. Joseph's Villa,* 184 A.D.2d 1000, 584 N.Y.S.2d 678 (4th Dept. 1992); *Gordon v. Eastern Railway Supply, Inc.,* 181 A.D.2d 990, 581 N.Y.S.2d 498 (4th Dept.1992), *aff'd,* 82 N.Y.2d 555, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993); *Cox v. LaBarge Bros. Co., Inc.,* 154 A.D.2d 947, 547 N.Y.S.2d 167 (4th Dept.), *appeal dismissed,* 75 N.Y.2d 808, 552 N.Y.S.2d 110, 551 N.E.2d 603 (1989)).

Accordingly, since plaintiff has failed to produce any evidence to show that he was engaged in an activity protected by Labor Law § 241(6) and any rules and regulations promulgated thereunder, summary judgment should be entered in favor of defendants dismissing that claim. *Jock v. Fien, supra,* 80 N.Y.2d at 968, 590 N.Y.S.2d 878, 605 N.E.2d 365.

To the extent the complaint alleges a cause of action under § 240(1) of the New York Labor Law, that claim should be dismissed as well. Section 240(1), entitled "Scaffolding

and other devices for use of employees," provides in relevant part:

> All contractors and owners and their agents, ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y.Labor Law § 240(1). New York courts have interpreted this section to impose absolute liability on the owner or general contractor, without regard to any negligence on the part of the injured worker, for a breach which has proximately caused the injury. *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). The duty under this section is nondelegable, and liability does not depend on whether the owner exercised supervision or control over the workplace. *Id.*

Because of the absolute protection provided by this section, its application has been limited to "circumstances where there are risks related to elevation differentials" and where "the proper 'erection,' 'construction,' 'placement' or 'operation' of one or more devices of the sort listed in section 240(1) would allegedly have prevented the injury." *Id.* at 514, 577 N.Y.S.2d 219, 583 N.E.2d 932 (citing cases). None of these circumstances are present here. There is nothing in the record to suggest that there was any elevation-related risk presented by the condenser cleaning job, and none of the devices listed in § 240(1) were necessary to perform the work or would have prevented the injury suffered. As discussed above, the uncontroverted evidence shows that the injury was proximately caused by the condition and operation of the rod and brush device, not by any condition of the workplace.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Item 31) should be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

DATED: Buffalo, New York
October 18, 1994